# MARICOPA AND PHŒNIX RAILROAD COMPANY *v.* ARIZONA TERRITORY.

### APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF ARIZONA.

No. 195. Submitted January 28, 1895. — Decided March 4, 1895.

When Congress grants to a railway company organized under the laws of a Territory a right of way over an Indian reservation within the Territory, and the road is constructed entirely within the Territory, that part of it within the reservation is subject to taxation by the territorial government.

The question whether it is so subject to taxation is one within the jurisdiction of this court, when properly brought here, irrespective of the amount involved.

AFTER the organization of the Territory of Arizona certain land situated within its geographical limits was set apart as an Indian reservation for the use of the Pima and Maricopa Indians. Act of February 28, 1859, c. 66, § 3, 11 Stat. 401. The tract is known as the " Gila River Reservation." The Maricopa and Phœnix Railroad Company owns and operates within the Territory of Arizona 24.16 miles of railroad track, all of which lie within the geographical outlines of the Territory, as named in its organic act, but 6.24 miles are within the reservation just mentioned. This portion was constructed under the authority of the act of Congress of January 17,

1887, c. 26, 24 Stat. 361, which provided that the railroad should be " authorized, invested, and empowered with the right to locate, construct, own, equip, operate, use, and maintain a railway and telegraph and telephone line through the Indian reservation situated in the Territory of Arizona known as the Gila River Reservation, occupied by the Pima and Maricopa Indians."

" SEC. 2.  A right of way one hundred feet in width through said Indian reservation is hereby granted to the said Maricopa and Phœnix Railway Company, and a strip of land two hundred feet in width, with a length of three thousand feet, in addition to said right of way, is granted for stations for every ten miles of road, no portion of which shall be sold or leased by the company ; with the right to use such additional ground, where there are heavy cuts or fills, as may be necessary for the construction and maintenance of the road-bed, not exceeding one hundred feet in width on each side of said right of way, or as much thereof as may be included in said cut or fill, ·  .   .   . And provided, further, that before any such lands shall be taken for the purposes aforesaid, the consent of the Indians thereto shall be obtained in a manner satisfactory to the President of the United States."

This act moreover contained a stipulation reserving the right to amend, alter, or repeal its provisions.  The tax laws of the Territory of Arizona provide as follows :

" The president, vice-president, general superintendent, auditor or general officer of any corporation operating any railway in this Territory shall furnish said board, on or before the first Monday in June in each year, a statement signed and sworn to by one of such officers, showing in detail the whole number of miles of railroad in each county, also the whole number of miles owned, operated, or leased in the Territory by such corporation making the return, and the value thereof per mile, with a detailed statement of all property of every kind, and the value located in each county in the Territory ; second, also a detailed statement of the number and value thereof of engines, passenger, mail, express, baggage, freight, and other cars or property owned by such railway, and on

railways which are a part of lines extending beyond the limits of this Territory. The returns shall show the actual proportion of the amount and full cash value of the rolling stock in use on the corporation's line which is necessary for the transportation of the freight and passengers, and the operation of the railroad in this Territory, during the year for which the return is made. The return shall also show the amount and value of property hereinafter designated in this section, and such further information shall be furnished as the board may in writing require. If said officers fail to make such statement, said board shall proceed to assess the property of the corporation so failing, and shall add thirty per cent to the value thereof as ascertained and determined by the said board. The said property shall be valued at its full cash value, and assessments shall be made upon the entire railway within this Territory, and shall include the franchise, right of way, roadbed, bridges, culverts, rolling stock, depots, station grounds, buildings, telegraph lines, and all other property, real and personal, exclusively used in the operation of such railway. In assessing said railway and its equipments, said board shall take into consideration all matters connected with said road necessary to enable them to make a just and equitable assessment of said railway property. On or before the third Monday in June in each year said board shall transmit to the board of supervisors of each county, through or into which any railway may run, a statement showing the length of the main track of such railway within the county, and the assessed value per mile of the same as fixed by a *pro rata* distribution per mile of the assessed value of the whole property herein specified, with a description of the whole of said assessed property within the county by metes and bounds, or other description sufficient for identification. And the said assessment and *pro rata* shall be made with reference to the value of the property belonging to said railway other than the main track, situate in each county and municipality through or into which said railway extends. Where the railroad of a railroad corporation lies in several counties, its rolling stock must be apportioned between them so that a portion thereof may be assessed in

each county, and each county's portion must bear to the whole rolling stock the same ratio which the number of miles of the road in such county bears to the whole number of miles of such road lying in this Territory."

Under this territorial law all the franchises and rights, and the road-bed, track, rolling stock, etc., of the railroad company were assessed at a valuation of $7000 per mile for 24.16 miles of track. The corporation paid the tax on the mileage outside of the reservation, but refused to pay on the 6.24 miles situated within it. Statutory proceedings to compel the payment of the tax culminated in a decree against the company. From this an appeal was prosecuted to the Supreme Court of the Territory. There the decree below was substantially affirmed, and the corporation was ordered to pay $1212.39, with costs, this amount being recognized as a subsisting lien "upon all the property of said Maricopa and Phœnix Railroad Company, situated in said county of Maricopa, and described as follows, to wit: The 24.16 miles of main track, with franchises and right of way." In consequence of this recognition of lien, it was moreover ordered that a copy of the decree should authorize the tax collector to sell so much of the property as might be necessary to pay the taxes, penalties, and costs. The case was then brought here by appeal.

*Mr. Harvey S. Brown* for appellant.

No appearance for appellee.

Mr. JUSTICE WHITE, after stating the case, delivered the opinion of the court.

We consider that many of the points which are here pressed upon our attention are not necessarily involved in the decision of the cause. The matter in dispute not being above $5000, exclusive of costs, our jurisdiction depends upon whether "there is drawn in question the validity of a treaty or statute of or an authority exercised under the United States." Act of March 3, 1885, c. 355, 23 Stat. 443. It is insisted that the Territory is without authority under its organic act to extend

its taxing power beyond its limits and over a reservation created by act of Congress, and that it has undertaken to do so, either directly, or by including the value of the property within the reservation in its general estimate of the amount for which the company ought to be assessed. This claim, we think, presents a question within our appellate jurisdiction. *Clayton* v. *Utah*, 132 U. S. 632. It is clear that such issues as involve the regularity of the tax, the sum of the penalties due, the extent of the lien given by the territorial law, etc., do not present any question of the exercise of authority under laws of the United States. *Linford* v. *Ellison*, 155 U. S. 503. It is conceded that there was no treaty with the Indians for whose benefit the reservation was established, limiting the power of Congress to grant to the railroad the rights conveyed. The consent of Congress to the railroad's entering on the land and using it, as therein provided, was, then, a valid exercise of power. Its necessary effect was, to the extent of the grant and for the purposes thereof, to withdraw the land from the operation of the prior act of reservation. And the immediate consequence of such withdrawal, so far as it affected the property and rights withdrawn, was to reëstablish the full sway and dominion of the territorial authority. *Utah & Northern Railway* v. *Fisher*, 116 U. S. 28 ; *Harkness* v. *Hyde*, 98 U. S. 476.

There is no force in the contention that, because the consent of the Indians, to be given in a manner satisfactory to the President, was a condition attached to the grant, and it does not appear by the record that such consent was given, therefore the rights admittedly enjoyed by the corporation are to be treated as if obtained without the Indians' consent.

In the first place, as the company has taken the rights granted by the statute, the legal presumption of duty performed (*omnia rite*, etc.) requires us to assume that the consent was given in accordance with law. And again, the company having assumed and exercised rights which it could possess only by virtue of such consent, cannot be permitted to aver its own wrongdoing, trespassing, and violation of the statute in order to escape its just share of the burden of taxation.

It is wholly immaterial whether the rights vested in the corporation by the act of Congress were rights of ownership or merely those which result from the grant of an easement. Whatever they were, they were taken out of the reservation by virtue of the grant, and came, to the extent of their withdrawal, under the jurisdiction of the territorial authority. The fact that Congress reserved the power to alter, amend, or repeal the statute in no way affected the authority of the Territory over the rights granted, although the duration of that authority may depend on the exercise by Congress of the rights reserved. The method of assessing railroads provided for in the statute was to treat each road as a unit, embracing the sum of its franchises, property, and rights. The division of the total amount of the one assessment of the property of the road, into certain sums per mile was a mere method of stating the assessment, and did not change the real unit forming the basis of taxation, the railroad, in its entirety, comprising every element entering therein, which could be made assessable. This being the case, it was clearly lawful for the taxing authorities of the Territory to consider the rights granted by the act of Congress and enjoyed by the railroad in making up the sum of the assessment upon its total property.

The other errors alleged, which are four in number, may be briefly disposed of. Two are concluded by the foregoing views. The assessment being made as a unit, the description of the thing assessed as found in the assessment roll was adequate, and the tax being due as a unit was correctly held to be a lien upon all the property assessed. The territorial court, as such, had jurisdiction to enforce the territorial law on the subject of the collection of taxes. The complaint that a penalty on the delinquent tax was erroneously included in the judgment is, if correct, without merit here. It involves only an error of calculation for a small amount, and is hence controlled by the principle "*de minimis*," etc., and, apart from this, we do not enter into an analysis of the figures to ascertain whether error, in this regard, was committed, because, if it was, the fact should have been called to the attention of the

court below, so as to have afforded an opportunity there to make the requisite correction. Motions for rehearing are expressly allowed by the statute law of Arizona. (Revised Statutes 1887, § 954.) Instead of availing himself of such a motion, the appellant, on the day the decree was entered, gave notice in open court of his intention to appeal, declaring therein that he excepted " only to such portion of said decision and judgment as decided that railroad property within the boundaries of an Indian reservation, within the Territory, is subject to taxation by the Territories or counties, and that such reservation is under the jurisdiction of the territorial courts."

*Affirmed.*