LEBO, Respondent, v. GRIFFITH, Appellant.

(173 N. W. 840.)

(File No. 4516.   Opinion filed August 15, 1919.)

1. **Indians—Taxation of White Man's Personalty on Reservation,**
   **Effect re Indian's Rights, Federal Jurisdiction.**

   To levy and collect taxes on personalty situated on an Indian
   Reservation but belonging to whites, does not deprive the In-
   dians of any of their rights, nor infringe upon jurisdiction of
   United States Government.

2. **Taxation—School District Partly on Unceded Reservation Lands,**
   **School House on Ceded Portion, Effect re Right to Tax White**
   **Man's Personalty on Reservation—Establishing Schools, State**
   **Policy, Officers' Duty Re.**

   A school district embracing as part thereof some unceded
   Indian reservation lands, the district school house being located
   in the ceded portion of the district, held, that for purposes of
   taxation of white man's personalty located in the ceded portion,
   the fact that the school house stood upon ceded lands was im-
   material; the location of schoolhouses being governed by con-
   venience of school patrons and determinable by school district
   electors; that such taxation does not depend upon the person-
   alty's nearness to or remoteness from a schoolhouse, that the

fact that the party taxed lives on unceded lands shows occupation of that part of the district by whites, from which fact alone it is presumed school facilities are necessary. **Held**, further, that it is the state's policy to establish school districts and maintain schools wherever needed, and it is school officers' duty to enforce such policy.

3.  **Same—Taxation of Indian Trust Lands and Personalty, Nonright of State.**

A state cannot tax Indian lands held in trust by United States, nor permanent improvements thereon, nor personalty supplied to Indians by the Government; but the state may exercise any governmental functions on Indian reservations within its limitations that do not interfere with Indians or their property or federal jurisdiction in maintaining order and administering Indian affairs.

Gates, J., concurring specially.

Appeal from Circuit Court, Ziebach County. HON. RAYMOND L. DILLMAN, Judge.

Action by George Lebon, as County Treasurer of Ziebach County, South Dakota, against William M. Griffith, to enforce collection of delinquent personal property taxes. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

*Philip & Waggoner,* for Appellant.

*Frank Gladstone,* for Respondent.

(3)  To point three of the opinion, Appellant cited:

Langford v. Monteith, 102 U. S. 145; Peano v. Brennan, 20 S. D. 342, 106 N. W. 409; United States v. Ewing, 27 Fed. 809; Laws 1915, Ch. 168; Pierre and Fort Pierre Bridge Ry. Co., v. Stuart, et al (S. D.) 168 N. W. 33.

Respondent cited:

Sec. 2, Art. XI, Const.; Savings Bank v. County, 29 S. D. 146; Pol. Code 1903, Sec. 2059; Vol. 6 of Enc. U. S. Supreme Court Repts., and cases cited:

POLLEY, J.  This action is brought under the provisions of section 12, c. 296, Laws of 1915; (section 6822, Code 1919), to enforce the collection of delinquent personal property taxes. The plaintiff is the county treasurer of Ziebach county. This county includes within its boundaries a portion of the unceded Cheyenne River Indian Reservation; and school district No. 3, as organized by the said county, is so situated that a part of it is within the said unceded Indian Reservation, while the remain-

der consists of ceded lands. Defendant is a resident of that portion of said school district that is upon the unceded lands of the reservation, and the personal property on which the disputed tax was levied was also upon said unceded lands; but the defendant is not a member of any Indian tribe, nor does the United States government appear to have furnished, or to have been in any manner interested in, the said personal property. Defendant does not question the right of the state to include the unceded lands within the organized county of Ziebach, nor the authority of said county to levy and collect taxes for state and county purposes against the personal property on an Indian reservation. In fact defendant offered to pay that portion of his personal taxes that was levied for state and county purposes, but he contends that the county has no right to maintain a school on said reservation or to tax personal property thereon for school purposes; and whether or not the county has this right is the sole question for determination on this appeal.

[1] Defendant cites numerous authorities in his brief, but, after a painstaking examination of such authorities, we fail to find anything in any of them that supports his position or that bears, even remotely, upon the question involved. The jurisdiction of the United States government over the Indians and the Indian lands, or the Indians' property, is in no wise involved. To levy and collect taxes on personal property situated on the reservation, but belonging to the whites, does not deprive the Indians of any of their rights nor infringe upon the jurisdiction of the United States government.

[2] The trial court found as a fact that no schoolhouse had ever been erected, nor school maintained, in that part of the district that is upon the unceded lands; but this is not material. The location of a schoolhouse within a school district is governed by the convenience of the school, and is determined by the electors of the school district; but the taxability of personal property within a school district does not depend upon its nearness to or remoteness from a schoolhouse. From the fact that defendant is living on the unceded portion of the school district, it is apparent that that portion of the district is occupied, to some extent at least, by whites; and from that fact alone, in the absence of anything to the contrary, it will be presumed that school facilities

are necessary. It is the policy of the state to establish school districts and to maintain schools wherever needed, and it is the duty of school officers of the various counties to carry out this policy.

[3] The state cannot tax Indian lands that are held in trust by the United States nor the permanent improvements thereon, nor the personal property supplied to the Indians by the United States. 6 Enc. U. S. Sup. Ct. Rep. 956; United States v. Rickert, 188 U. S. 432, 23 Sup. Ct. 478, 47 L. Ed. 532. But property owned by persons other than Indians may be taxed by the state in which the reservation is located. 6 Enc. U. S. Sup. Ct. Rep. 956, 957; Wagoner v. Evans, 170 U. S. 588, 18 Sup. Ct. 730, 42 L. Ed. 1154; Thomas v. Gay, 169 U. S. 264, 18 Sup. Ct. 340, 42 L. Ed. 740; Maricopa & P. R. v. Arizona, 156 U. S. 347, 15 Sup. Ct. 391, 39 L. Ed. 447; Utah & N. R. v. Fisher, 116 U. S. 28, 6 Sup. Ct. 246, 29 L. Ed. 542. We believe it may be said that the state may exercise any governmental function upon an Indian reservation within such state that does not interfere with the Indians or their property or the jurisdiction of the United States in maintaining order and administering the Indian affairs.

We believe the school board was acting within its authority when it included a portion of the unceded Indian reservation within the boundaries of said school district, and that defendant's property was properly taxed for the maintenance of schools within the district.

The judgment appealed from is affirmed.

GATES, J. (concurring specially). In my opinion the real question in this case is whether lands and personal property within the limits of an Indian reservation may be included within a school district.

By the Organic Act of the territory of Dakota it was provided:

"Provided, that nothing in ths act contained, shall be construed to impair the rights of person or property now pertaining to the Indians in said territory, so long as such rights shall remain unextinguished by treaty between the United States and such Indians, or to include any territory which, by treaty with any Indian tribe, is not, without the consent of said tribe to be

included within the territorial limits or jurisdiction of any state or territory; but all such territory shall be excepted out of the boundaries and constitute no part of the territory of Dakota, until said tribe shall signify their assent to the President of the United States to be included within the said territory, or to affect the authority of the government of the [United States to make any regulations respecting such Indians, their lands, property, or other rights, by treaty, law, or otherwise, which it would have been competent for the government to make if this act had never passed." Dak. Session Laws 1862, p. 21.

Appellant contends that the land in question was then and now is a part of an Indian reservation, and that such act has never been repealed; therefore that the county of Ziebach was powerless to include those lands within a school district. The fallacy in appellant's argument is the statement that the above act has not been repealed. It was repealed by the second subdidivision of section 4 of the Enabling Act of 1889, which authorized the admission of the two Dakotas, Montana, and Washington into the Union.

Said subdivision was reproduced into our Constitution as subdivision 2 of article 22, and as section 18 of article 26, as follows:

"Second. That we, the people inhabiting the state of South Dakota, do agree and declare that we forever disclaim all right and title to the unappropriated public lands lying within the boundary of South Dakota, and to all lands lying within said limits owned or held by the Indian or Indian tribes, and that until the title thereto shall have been extinguished by the United States, the same shall be and remain subject to the disposition of the United States, and said Indian lands shall remain under the absolute jurisdiction and control of the Congress of the United States. * * * But nothing herein shall preclude the state of South Dakota from taxing as other lands are taxed any lands owned or held by any Indian who has severed his tribal relation and has obtained from the United States, or from any person a title thereto by patent or other grant save and except such lands as have been, or may be granted to any Indian or Indians under any act of Congress containing a provision exempting the lands thus granted from taxation, all such lands which may have been

exempted by any grant or law of the United States, shall remain exempt to the extent, and as prescribed by such act of Congress."

It is apparent that while by the Organic Act the territory of Dakota had no jurisdiction over lands, persons, or property within the reservation (in fact such reservation was no part of the territory), now the limit of jurisdiction of South Dakota is not the boundary line of a reservation. The test of the state's jurisdiction over *lands* is whether the government title and control has been extinguished. Lands within the boundary of a reservation owned by white persons or by nontribal Indians in fee without restriction may be taxed by the state, and personal property owned by such persons may also be taxed. As to such real and personal property federal control has vanished and state control has arisen. So it is clear that as to such property the right of the state to make its respond to educational activities must be conceded.

And while tribal lands still under the dominion of Congress may not be taxed, yet the personal property of a white man situate thereon may be taxed, because such taxation does not encroach upon the principle that "said Indian lands shall remain under the absolute jurisdiction and control of the Congress." The jurisdiction of South Dakota within the limits of its state boundaries is supreme, except as restricted by the Constitution.

I am not prepared at this time to subscribe to Judge POLLEY'S statement:

"We believe it may be said that the state may exercise any governmental function upon an Indian reservation within such state that does not interfere with the Indians or their property or the jurisdiction of the United States in maintaining order and administering the Indian affairs."

If he had omitted the last eight words of such quotation I would agree. I am not prepared to assert that the only present jurisdiction of Congress over tribal Indian lands is "in maintaining order and administering Indian affairs."