**WORK, Secretary of the Interior, v. MUMMERT.**

Circuit Court of Appeals, Eighth Circuit.
November 2, 1928.

No. 8047.

Ambrose C. Epperson, Asst. U. S. Atty., of Omaha, Neb. (James C. Kinsler, U. S. Atty., and George A. Keyser and William J. Froelich, Asst. U. S. Attys., all of Omaha, Neb., and Philip M. Aitken, Asst. U. S. Atty., of Lincoln, Neb., on the brief), for appellant.

Archie M. Smith, of Pender, Neb., for appellee.

Before BOOTH, Circuit Judge, and POLLOCK and DEWEY, District Judges.

DEWEY, District Judge. Plaintiff in the original suit, David Z. Mummert, appellee herein, having purchased from the county treasurer of Thurston county, Neb., certain real estate sold to collect the taxes assessed for the year 1920, and having further paid the taxes for the years 1921, 1922, 1923, and 1924, brought this suit to establish and foreclose his alleged lien upon said real estate, and asking that any interest of the defendants, Eliza Morgan Thomas and Paul Thomas and Hubert Work, as Secretary of the Interior of the United States, therein, be forever barred and foreclosed by the proceeding.

The defendant in the original action, appellant herein, Hubert Work, as Secretary of the Interior of the United States, alleges in his answer certain facts which are the basis of the controversy. The allegations of this answer, in so far as they are material, are as follows:

That on and prior to May 18, 1920, the United States of America and the Secretary of the Interior of the United States, held certain restricted funds in trust for the defendant Eliza Morgan Thomas, a member of the Omaha tribe of Indians, who is incompetent and a ward of the United States government. Said restricted funds were the proceeds of a sale of certain real estate in Thurston county, Neb., which had been allotted to the said Eliza Morgan Thomas, and for which a trust patent had been issued to the said Indian woman. That said Indian woman held said lands so allotted in trust for her until on or about March 24, 1920, when the Secretary of the Interior, under the authority of the Acts of Congress of March 1, 1907 (34 Stat. 1015, 1018), and May 29, 1908 (35 Stat. 444), approved an exchange whereby she transferred the property so allotted to her to John F. Farley, for land described as the SW¼ of the NW¼ of section 36, township 25, north of range 9 east of the 6th P. M., in Thurston county, Neb. And the Secretary of the Interior caused said real estate to be purchased for the use and benefit of the said Indian woman and her heirs, and caused a deed to be executed to her, conveying said land for the consideration named in the deed of $5,100.

The land so allotted to the said Indian

woman was of a greater value than $5,100, and said land so traded became taxable for state and county purposes under the laws of the state of Nebraska, and was of greater value than the land so obtained for her. The consideration given for said land, being allotted land, was restricted property and funds in the control and held under the supervision of the Secretary of the Interior, which trust period did not terminate until May 23, 1925, and until then the Secretary of the Interior held the property in controversy herein, under and by virtue of the laws above cited.

The Secretary of the Interior consented to the purchase of the property here in controversy for the use and benefit of the said Indian woman upon the condition that said land should be held under the same trust provision as was the said allotted land. And he caused to be inserted in the deed given to the said Indian woman, a recital of such conditions which are in words as follows:

"Subject to the condition that while the title is in the grantee or heirs, no deed, mortgage, power of attorney, contract to sell, lease, or other instrument affecting the land herein described, or the title thereto, shall be of any force or effect or capable of confirmation or ratification, unless approved by the Secretary of the Interior."

And said lands were purchased by authority of Congress for the use and benefit of the said Indian woman, Eliza Morgan Thomas, and the same is and was acquired by her for the purpose of maintaining herself and her family and the education of her children.

That by reason of said conditions and the law pertaining to the taxation of property purchased by the United States government for governmental purposes, the said real estate was not subject to taxation, and the plaintiff obtained no lien upon the premises by any tax sale certificate issued to him, nor by the payment of taxes imposed upon said land as alleged in the petition.

The defendant further alleges, as an additional defense, that the taxes for the years 1923, 1924, and 1925, alleged to have been paid by the plaintiff, were illegal and void under and by virtue of an Act of Congress of date February 14, 1923 (42 Stat. 1246 [25 USCA § 335]), which made applicable to lands purchased for Indian wards of the government the provisions of the law pertaining to restrictions upon allotments to Indians under restricted patents.

The defendant asks that plaintiff's complaint be dismissed.

The appellee filed a motion to strike the Secretary's answer on the ground that the same did not state facts sufficient to constitute a defense against the plaintiff's complaint, and this motion was sustained. The plaintiff elected to stand on the pleadings, taking exceptions to the court's ruling. Whereupon the court entered a decree in favor of the appellee.

The appellant earnestly and seriously contends that, under the state of facts set out by him in his answer, the real estate in controversy was received under such circumstances and used for such purposes that the same constitutes the use of government funds for the performance of a governmental function. And the exchange of lands wherein the Indian received title to the real estate in question was but a transfer of property, and as the original land could not have been taxed, as one took the place of the other, it remained in the same status, and to permit taxation thereof by the state would be permitting the levying of a tax against property essentially used for the performance of a government instrumentality, if not a direct tax against the government itself.

These questions involve the general policy of the government toward its Indian wards, the enactments of Congress and their express and implied authorization and policy, and the interpretation of these policies by the decision of the courts. Tiger v. Western Investment Co., 221 U. S. 286, 31 S. Ct. 578, 55 L. Ed. 738; Bowling and Miami Investment Co. v. U. S., 233 U. S. 528, 34 S. Ct. 659, 58 L. Ed. 1080.

To consider then the policy and plan and implied authority, we must start with the congressional enactments. The Act of Congress of August 7, 1882, in part, provides as follows:

Section 6: "That upon the approval of the allotments provided for in the preceding section by the Secretary of the Interior, he shall cause patents to issue therefor in the name of the allottees, which patent shall be of the legal effect and declare that the United States does and will hold the land thus allotted for the period of 25 years in trust for the sole use and benefit of the Indians to whom such allotment shall have been made, or in case of his decease, of his heirs according to the laws of the state of Nebraska, and that at the expiration of said period the United States will convey the same by patent to said Indian or his heirs as aforesaid in fee discharged of said trust and free of all charge or incumbrance whatsoever. And if any conveyance shall be made of the lands set apart and allotted as herein provided, or any con-

tract made touching the same before the expiration of the time above mentioned, such conveyance or contract shall be absolutely null and void." 22 Stat. 342.

The land which was traded was an allotment made to the Indian Eliza Morgan Thomas under and by virtue of a trust patent of date May 23, 1900. As stated by Mr. Justice Harlan in U. S. v. Rickert, 188 U. S. 432, 436, 23 S. Ct. 478, 480 (47 L. Ed. 532):

"The word 'patents,' where it is first used in [the congressional enactment which provided for the allotment of lands to the Indian wards of the government] was not happily chosen to express the thought which, it is clear, * * * Congress intended to express. The 'patents' [referred to] were, as the statute plainly imports, nothing more than instruments or memoranda in writing, designed to show that for a period of 25 years the United States would hold the land allotted, in trust for the sole use and benefit of the allottee. * * * In other words, the United States retained the legal title, giving the Indian allottee a paper or writing, improperly called a 'patent,' showing that at a particular time in the future, unless it was extended by the President, he would be entitled to a regular patent conveying the fee."

The defendant alleges in his answer that the trade was made under the authority of the Acts of Congress of March 1, 1907 (34 Stat. 1015–1018), and May 29, 1908 (35 Stat. 444). These sections authorize the Secretary of the Interior to make disposition of these lands held in trust for the Indians, and in so far as they have any bearing on this case, they are as follows:

"Any noncompetent Indian to whom a patent containing restrictions against alienation has been issued for an allotment of land in severalty, under any law or treaty, * * * may sell or convey all or any part of such allotment * * * on such terms and conditions and under such rules and regulations as the Secretary of the Interior may prescribe, and the proceeds derived therefrom shall be used for the benefit of the allottee * * * so disposing of his land * * * under the supervision of the Commissioner of Indian affairs; and any conveyance made hereunder and approved by the Secretary of the Interior shall convey full title to the land or interest so sold the same as if fee-simple patent had been issued to the allottee." Act of March 1, 1907; 25 USCA § 405.

And "the lands, or any part thereof, allotted to any Indian, * * * can be sold under existing law by authority of the Secretary of the Interior, * * * may be sold on the petition of the allottee, * * * on such terms and conditions and under such regulations as the Secretary of the Interior may prescribe: * * * Provided, that the proceeds derived from all sales hereunder shall be used, during the trust period for the benefit of the allottee, or heir, so disposing of his interest, under the supervision of the Commissioner of Indian affairs: And provided further that upon the approval of any sale hereunder by the Secretary of the Interior he shall cause a patent in fee to issue in the name of the purchaser for the land so sold." Act of May 29, 1908, 35 Stat. 444; 25 USCA § 404.

Congress then has not attempted to exercise any control over the funds which are received by the Secretary of the Interior from the sale of the allotted lands, other than that the proceeds therefrom should be used for the benefit of the Indian ward.

We do not understand counsel for the government to contend that Congress has by express or implied enactments, exempted from taxation property purchased from the proceeds of the sale of allotted lands, and we find no case where the courts have gone any farther than to permit the Secretary of the Interior to restrict such lands purchased with the conditions recited in the deed to this land.

The appellant, in his supplemental brief, gets at the heart of this question when he says: "The primary question is whether it can be said that the property in question is essentially for the performance of a governmental instrumentality."

This is not a question of whether or not the lands purchased for the Indian ward are an "instrumentality" of government, but rather, whether the land in question is government property used for a government purpose, plan and project, and herein lies the question for determination.

It has been expressly held by the United States Supreme Court that lands allotted by the government to Indian wards under congressional enactments, are not subject to state taxing authorities. U. S. v. Rickert, 188 U. S. 432, 23 S. Ct. 478, 47 L. Ed. 532. Also that neither permanent improvements, nor personal property obtained from the United States and used by the Indian on the allotted lands, are subject to state or local taxation. U. S. v. Rickert, supra, 443 (23 S. Ct. 478). Also it has been held that where allotted property is sold for the benefit of the heirs of the allottee, and the proceeds put in a bank, a stipulated amount to be paid to the heirs each month, that such proceeds are exempt. U. S. v. Thurston County, Neb. (C.

C. A.) 143 F. 288; U. S. v. Pearson (D. C.) 231 F. 270.

In the Thurston County Case, however, as the act under consideration vested in the Secretary plenary powers to permit or forbid sale of the allotted land, this impliedly included the power to consider and determine the terms and conditions of sale by rules and regulations, and permitted the Secretary to require the Indian to agree that he, the Secretary, might hold this money in his name in the bank to be paid out on his check. Here then, by agreement with the Indian, the property was held by the government.

The case of United States v. Yakima County et al., 274 F. 117, decided by Rudkin, District Judge, holds that real estate acquired from the proceeds of the sale of allotted land is exempt from taxation on the trust theory, but the reasoning relies partly upon a Kansas act which expressly exempts such lands from taxation by the state of Kansas.

As against these authorities are the decisions relied upon by both the appellant and appellee, which show the gradual advancement to the final conclusion in the United States v. Mummert Case (C. C. A.) 15 F. (2d) 926, that the purchase of real estate by the Secretary of the Interior for the use of the Indian wards of the government, which was formerly subject to taxation, where the title is taken in the name of the Indian, did not exempt the property from local taxation. McCurdy v. U. S., 246 U. S. 263, 38 S. Ct. 289, 62 L. Ed. 706; Sunderland v. U. S., 266 U. S. 226, 45 S. Ct. 64, 69 L. Ed. 259; U. S. v. Law (C. C. A.) 250 F. 218; U. S. v. Gray (C. C. A.) 284 F. 103; U. S. v. Ransom (C. C. A.) 284 F. 108; U. S. v. Brown (C. C. A.) 8 F.(2d) 564; U. S. v. Mummert (C. C. A.) 15 F.(2d) 926; Shaw, State Auditor v. Gibson-Zahniser Oil Corp., 276 U. S. 575, 48 S. Ct. 333, 72 L. Ed. 709.

After the land was allotted to the Indians under congressional enactment, it was early manifest that occasions were bound to arise necessitating these lands to be sold. Hence the further enactment permitting this to be done under proper rules and regulations by the Secretary of the Interior, with the proviso, that the proceeds so derived shall be used during the trust period for the benefit of the allottee.

Under the rule adopted by Congress the Secretary of the Interior permitted the sale of these allotted lands for the benefit of the allottee, and purchased or exchanged therefor, land which had been under the taxing control of the state. It is well to keep in mind that the state has sovereign powers as well as the nation, and unless government projects necessitate use of property for government purposes, taxing thereof should remain with the state.

It is true there is a fine distinction between property held in trust by the United States for its wards, with promises later to release, and which is used and possessed by the ward, and the taking of property in the name of the Indian with reservations which exclude its alienation or incumbrancing, and prevents its enjoyment for any purpose except that of possession and use. Yet there is this distinction: That the allotted lands have never been subject to taxation, while the purchased lands, if exempted, would amount to an authorization to the Secretary of the Interior, in the exercise of his discretion, to exchange allotted lands for what we will call state lands, at any time and any place he thought necessary, and thus withdraw such state land from taxation.

As there is little distinction between the effect of the purchase of the two tracts by the government for truly government purposes during the period of the trust, if an open question, we might agree with the statement, but not decision, in the Gray case, that, if land is purchased by the government as necessary and appropriate means to be used in caring for, educating or furnishing a needed home for an Indian ward, they would be beyond the reach of the state's power to tax.

We also agree with the government's counsel that the several cases touching upon this subject, except the Mummert Case, are all distinguishable, and not directly controlling the facts in this case. The cases of McCurdy v. U. S. and Shaw, State Auditor v. Gibson-Zahniser Oil Corp., cited above, are based upon congressional acts having to do with Osage and Creek Indians. In U. S. v. Brown, the land was purchased from the proceeds of oil leases on restricted lands. U. S. v. Gray, while holding the lands taxable, yet stated that, if the facts were similar to the facts shown in the case at bar, the lands would not be taxable, but can hardly be called a decisive authority. In U. S. v. Ransom, lands were purchased with royalties from mining leases, and were clearly not bought and used for governmental purposes.

Yet, under all these cases, as well as the Sunderland Case and the Law Case, the controlling thought is that, as Congress had not attempted to restrict the use of the purchase money received by the Secretary of the

Interior for the sale of allotted lands other than that he should use the same for the use and benefit of the ward, that where he purchased lands formerly taxable, the same were not exempt. And they are authority that the proceeds from the sale of Indian lands and income from allotted lands are not exempt as government property. And while they do not all discuss the question whether the purchased lands were used for governmental purposes and were held by the Indian as trust funds, this thought must have been present because it is the dividing line in such cases.

■ It is practically conceded that the case of U. S. v. Mummert (C. C. A.) 15 F.(2d) 926, is based upon facts substantially the same as those in the case at bar. The government's position is, that the reasoning under which that case is decided is so contrary to the general line of authorities that it should be overruled. While the Mummert Case does not expressly so declare, we are satisfied that upon consideration of the cases upon which it is founded, this court, in deciding the former Mummert Case, was constrained to find that the courts in formerly considering this question had in mind that when the Secretary of the Interior purchased, or permitted the purchase by the Indian ward of lands which had formerly been taxable by the state and municipal government, knowing that they had been so taxable, he was but exercising the authority granted to him, and must have realized that he was purchasing, or permitting the Indian to purchase such lands with the taxable burden upon them, and that the power to declare property exempt from taxation as government property, or used for a governmental purpose, did not extend to facts as in that case presented. We also are constrained to so hold.

The Nebraska Enabling Act, upon which the government relies, provides as follows: "No taxes shall be imposed by said state on lands or property therein belonging to or which may hereafter be purchased by the United States." This is but a general statement of the existing laws of the United States and does not in any manner conflict with the holdings herein.

The point is also made that the state's resources are not diminished because the land which was exchanged for that purchased by the Indian ward became subject to taxation, and in the event the land purchased is held exempt from taxation the state's resources will not be diminished. This is a matter of argument but could not be controlling as to the right of the state of Nebraska to tax the purchased land.

■ The defendant especially alleges in his answer as an additional defense as against the taxes for the years 1923, 1924, and 1925, that the same are illegal and void by virtue of an Act of Congress of date February 14, 1923 (42 Stat. 1246).

The provision of that amendment as set out in appellant's brief and argument is as follows: "That unless otherwise specifically provided the provisions of the Act of February 8, 1887 (24 Stat. 338 [388]) as amended [25 USCA § 331 et seq.], be and they are hereby extended to all lands heretofore purchased or which may hereafter be purchased by authority of Congress for the use or benefit of any individual Indian, or band or tribe of Indians."

The provisions of the Act of Congress of February 8, 1887, have to do with the issuing of patents wherein the land is retained in the name of the United States government, and the extension of the provisions of that act would not raise any new or additional defense than that set out in the other part of the answer.

It must follow that the action of the trial court in sustaining the plaintiff's motion to strike defendant's answer was correct, and that the decree entered should be and the same is hereby affirmed.