## UNITED STATES v. GLACIER COUNTY et al.

### No. 2947.

District Court, D. Montana.
Oct. 5, 1936.

John B. Tansil, U. S. Atty., of Butte, Mont., for plaintiff.

Horace W. Judson, of Cut Bank, Mont., for Glacier County and its officers.

Hall & McCabe, of Great Falls, Mont., for Portland Cattle Loan Co.

S. C. Ford, of Helena, Mont., for J. L. Sherburne, J. H. Sherburne, and Sherburne Mercantile Co.

PRAY, District Judge.

This is a suit in equity submitted to the court upon stipulations of counsel and documentary evidence. The facts may be briefly stated, likewise the theories of counsel for the respective parties.

The lands of the Indian wards described in the complaint are situated on the Blackfeet Indian Reservation, were to be held by the United States under trust patents in favor of the Indians named therein for the period of twenty-five years, and were to be free from taxation during that period. It appears that within two years after the issuance of these trust patents the government, under a statute hereinafter referred to, issued patents in fee to the Indians without any application therefor by the Indians and without their consent. Thereafter the lands were listed for taxation in Glacier county and the Indian owners were required to pay taxes. Some of the Indians defaulted in the payment of taxes and later the county obtained tax titles to their lands. Why the patents in fee were issued in such numbers and under such circumstances before two years of the trust period had expired does not clearly appear. However, all of these patents in fee were later canceled, except the Whistler patent, under the acts of Congress of Feb. 26, 1927, 25 U.S.C.A. § 352a, and of Feb. 21, 1931, 25 U.S.C.A. § 352b.

The government contends that upon the issuance of the trust patents the Indians acquired vested rights to tax free lands for the period of the trust which could not be destroyed or impaired under the foregoing state of facts in any improvident or unauthorized manner, and that consequently the government is entitled to reimbursement on behalf of the Indians for the taxes collected. The position of the defendants is, that the lands in question were and are subject to taxation, and that if complainant has violated any treaty, law, or contract with the Indians named in the bill, then it becomes the duty of complainant to rectify its own mistake.

It is quite evident from the citations contained in complainant's brief that the lands were to be held for the Indians during that period, and that such period might be extended in the discretion of the President; and that any deed or contract for the conveyance of these lands during that time would be "absolutely null and void." See Act of Congress of March 1, 1907, 34 Stat. 1015, 1035; chapter 9, § 331 et seq., title 25, U.S.C.A. and section 348, title 25, U.S.C.A. Also U. S. v. Rickert, 188 U.S. 432, 23 S.Ct. 478, 47 L.Ed. 532; Act of Feb. 22, 1889, ch. 180, 25 Stat. 677, § 4, Enabling Act for Montana.

The statutes and leading authorities cited are familiar to the court, and likewise the question whether a vested right was created in the dealing of the government with the Indian ward in the issuance of a trust patent providing tax free land for the period stated therein; also the ef-

fect of subsequent acts of Congress, or regulations based thereon, tending to destroy or impair such vested right. Act of March 1, 1907, 34 Stat. 1015, 1035; title 25, section 348, U.S.C.A.

In U. S. v. Rickert, 188 U.S. 432, 23 S.Ct. 478, 480, 47 L.Ed. 532, the court held such lands were free from state taxation and said: "So that if they may be taxed, then the obligations which the government has assumed in reference to these Indians may be entirely defeated; for by the act of 1887 the government has agreed at a named time to convey the land to the allottee in fee, discharged of the trust, 'and free of all charge or encumbrance whatsoever.' To say that these lands may be assessed and taxed by the county of Roberts under the authority of the state is to say they may be sold for the taxes, and thus become so burdened that the United States could not discharge its obligations to the Indians without itself paying the taxes imposed from year to year, and thereby keeping the lands free from encumbrances. * * * It was therefore well said by the Attorney General of the United States, in an opinion delivered in 1888, 'that the allotment lands provided for in the act of 1887 are exempt from state or territorial taxation upon the ground above stated, * * * namely, that the lands covered by the act are held by the United States for the period of twenty-five years in trust for the Indians, such trust being an agency for the exercise of a Federal power, and therefore outside the province of state or territorial authority.' 19 Ops.Atty.Gen. 161, 169."

Many cases uphold this theory of exemption and support will be found in section 4 of the Enabling Act, state of Montana, of Feb. 22, 1889, c. 180, 25 Stat. 677. The State Constitution of Montana carries a like provision. And again, it was held in U. S. v. Rickert, supra, that, "No authority exists for the state to tax lands which are held in trust by the United States for the purpose of carrying out its policy in reference to these Indians." But the Secretary of the Interior seems to have been given authority by the act of May 8, 1906 (title 25 U.S.C.A. § 349), to issue patents in fee to allottees and remove all restrictions as to sale, incumbrance, or taxation. Under this act, the fee patents in question were issued to the Indians.

There appears to be no reason why the court should not hold here, as it has held heretofore, when the same question in substance has been presented, that the Indian possessed the right to have his lands free from state taxation for the period expressed in the patent, and that no act of Congress, such as the foregoing appears to be, could disturb or impair that right. Choate v. Trapp, 224 U.S. 665, 32 S.Ct. 565, 56 L.Ed. 941; Morrow v. U. S. (C.C.A. 8) 243 F. 854; U. S. v. Benewah County, Idaho (C.C.A. 9) 290 F. 628. It was held in the Morrow Case, above, that the government may in its dealings with the Indians create property rights which, once vested, even it cannot alter, and an array of cases are cited in support of this declaration. The quotations by counsel from all of these cases are directly in point. No application was made or consent given in respect to the issuance of any of these patents. In the Benewah County Case it was held that the issuance of fee patents, without the application and consent of the allottees, rendered such act illegal. Objection is made that because of delay and alleged mistake of officers the case should not proceed, but this court does not find any valid reason, nor has any been presented, why it should not proceed to a decree in favor of the government. The Whistler lands rest upon the same state of facts and the same vested right held by the court to exist in respect to the other Indians, and therefore the court does not believe it should be governed by the statute offered in defense.

If the views herein expressed should be sustained by the higher courts, the result is bound to work some hardship on the counties affected which is to be regretted in a double sense since the officers of the county were apparently correct in assuming that they had the right to assess and tax these lands, although it must be remembered that great care should be taken in dealing with the Indians where there are so many treaties, statutes, and regulations to be considered which were entered into, enacted, and adopted with the intent, in most instances, of properly caring for a helpless and dependent people. To provide every reasonable safeguard for the protection of the Indians and the security of their possessions is the plain duty of the government.

Let a decree be entered as prayed for in the bill and in accordance with the views of the court, to include the substance of the stipulation referred to in complainant's reply brief.