LEADING FIGHTER et ma., Appellants v.
COUNTY OF GREGORY, Respondent

(230 N.W.2d 114)

(File No. 11321. Opinion filed May 9, 1975)

Terry L. Pechota, Fort Thompson, and **Arthur Bunce, Menlo Park, South Dakota Legal Services**, Rosebud, for plaintiffs and appellants.

**Wally Eklund**, Gregory, for defendant and respondent.

BIEGELMEIER,* Justice (on reassignment).

Plaintiffs' action challenges the tax deed title of defendant county issued by reason of failure to pay the real estate taxes assessed and levied against the lots involved. The facts were not in dispute and are set forth in a stipulation. No question is raised as to the procedures followed that led to the issuance of the tax deed, except claim is made that the property is exempt from any taxes of the State of South Dakota. The circuit court held that the

---

* Retired Supreme Court Justice acting pursuant to SDCL 16-1-5.

property was taxable and that the deed to the county was valid; therefore, it entered a judgment dismissing the action.

■ Nanette Leading Fighter and David Leading Fighter, her husband, are duly enrolled members of the Rosebud Sioux Indian Tribe. Nanette was the original allottee of a parcel of reservation land, the title to which was in the name of the United States as trustee for her. On April 7, 1960, this allotment was sold in due course, and the proceeds of $4,400 were received and held in trust by the United States by depositing the same in her account in the Rosebud Indian Agency. On June 24, 1960, Nanette purchased the lots here involved from Avery H. Webster. An agreement was executed on a Rosebud Indian Agency form wherein Webster agreed to furnish an abstract of title and a deed conveying the lots to Nanette, and she authorized the Agency Superintendent to make payment to Webster of $1,300 "from money" paid her as her share from the sale of the allotment on deposit in the Agency account. The agreement was approved by an official of the B.I.A. (Bureau of Indian Affairs). Webster then conveyed the four lots he owned to plaintiff Nanette and Nicodemus Leading Fighter, her son, by warranty deed.[1] The lots are in the Town of Herrick, South Dakota, and are not part of any Indian reservation.

■ Plaintiffs contend that as title to the original allotment[2] to Nanette and the proceeds of the sale of said allotment were held in trust by the United States they were not taxable by the state, and therefore the lots thereafter purchased, as here related, were also tax exempt. The several theories and the statutes, constitutional provisions and decisions cited in support thereof are now examined.

1. In the unsatisfactory state of the record, Nicodemus was not made a party to the action and David is not shown to have any title or interest therein; thus, the judgment as to David must be affirmed. However, as the parties refer to "the plaintiffs" as such in their briefs, that term will be used throughout the opinion.

2. Title to the original allotment of the land within the Rosebud Indian Reservation was held in trust by the United States for plaintiff Nanette Leading Fighter. As such, it was exempt from state taxation. Ch. 405, 25 Stat. 888; 25 U.S.C.A. § 462; Lebo v. Griffith, 42 S.D. 198, 173 N.W. 840. See also United States v. Rickert, 188 U.S. 432, 23 S.Ct. 478, 47 L.Ed. 532.

 The trial court held that 25 U.S.C.A. § 349 did not grant immunity from state taxation even under the argument of plaintiffs that United States v. Glacier County, D.C.Mont., 17 F.Supp. 411, extended such claim to require consent of the allottee to permit state taxation. That section provides:

> "* * * the Secretary of the Interior may, in his discretion, and he is authorized, whenever he shall be satisfied that any Indian *allottee* is competent and capable of managing his or her affairs at any time to cause to be issued to such *allottee a patent* in fee simple, and thereafter all restrictions as to sale, incumbrance, or taxation of said land shall be removed * * *." (emphasis supplied)

This section does not apply to the facts shown by this record, as it grants power under certain circumstances to the Secretary to "cause to be issued to such *allottee a patent* in fee simple * * *" (emphasis supplied) Patents are issued only by sovereign powers (see "Patent—Of Land," 31A Words And Phrases, and "patent," Webster's Third New International Dictionary) and deeds are executed by persons and private corporations. Section 349 is expressly limited to a "patent" to an "allottee" over which the United States or its Secretary of the Interior has certain powers or authority. No such powers or authority exists over a deed to property executed by a private citizen, and § 349 does not purport to grant such authority. Plaintiff Nanette did not acquire title to the Herrick lots by virtue of a patent from the United States, nor was Nanette Leading Fighter an allottee. She was a grantee in a deed from a private citizen to lots outside a reservation for which she paid a valuable consideration—the same as any such transaction. The Glacier County opinion, supra, while not binding on this court, limits its application so as to exclude the consent theory from the transfer of title here.

Assuming that § 349, 25 U.S.C.A. applied, some claim is made that § 194, 25 U.S.C.A. places the burden of proof to show Nanette's consent to the taxation as expounded in the Glacier County opinion. While that opinion and § 349 have been held inapplicable here, § 194 places such burden only in "trials about the right of property in which an Indian may be a party on one

side, and a white person on the other * * *." That section and cases cited under it are thus inapposite.

■ Plaintiffs assert that §§ 464 and 465, 25 U.S.C.A. grant immunity from taxation. Section 464 states that no exchange of restricted Indian lands shall be made or approved except as provided in § 465 and other sections cited therein. These two sections, so far as pertinent here, are:

§ 464.

"Except as provided in sections * * 464, 465 * * * of this title, no * * exchange * * * of restricted Indian lands * * * shall be made or approved: * * * *Provided further,* That the Secretary of the Interior may authorize voluntary exchanges of lands of equal value * * * whenever such exchange, in his judgment, is expedient and beneficial for or compatible with the proper consolidation of Indian lands * * *."

§ 465.

"The Secretary of the Interior is hereby authorized * * * to acquire, through * * * exchange, * * * any interest in lands * * * within or without existing reservations * * * for the purpose of providing land for Indians.

* * * * * *

"Title to any lands * * * acquired pursuant to sections * * * 464, 465 * * * of this *title shall be taken in the name of the United States in trust for the * * * individual Indian* for which the land is acquired, and such lands * * shall be exempt from State and local taxation." (emphasis supplied)

There was no exchange involved here that the Secretary could or did approve, rather, there was an outright sale of land and a later independent purchase of lots—not of equal value and not in the "name of the United States in trust for" Nanette, which § 465 requires.

Further, in connection with these and other sections mentioned in this opinion, it appears there were two independent transactions not within the purport of the sections cited by plaintiffs; first, the sale of land by Nanette alone, and later a payment out of the sale proceeds to Webster and the transfer of the lots to Nanette and Nicodemus, her son, personally. This amounts to a gift or sale of part of the lots to Nicodemus which could not have been done if title had been taken in the name of the United States as required by § 465. This transaction was not one permitted or envisioned by these statutes.

It is further argued that the lots are tax exempt under 25 U.S.C.A. § 409a.[3] Originally, § 409a applied only to the Five Civilized Tribes. 46 Stat. 1471. At the time the bill was introduced which amended § 409a to include all Indians, the following explanation was given:

"It is now the law in the Five Civilized Tribes in Oklahoma that lands can be condemned for water supply and other public purposes. It is the law in the Five Civilized Tribes that where land is sold the money derived from the sale can be used for buying other lands, and such other lands may be placed under restriction, and thereby exempt from taxes.

"At Pawnee, Okla., outside of the Five Civilized Tribes, the Indian Department wants to secure some Indian lands for public purposes, and the bureau wants to take the money and buy other lands, so that such lands when purchased for Indians will be restricted and not be subject to taxation.

---

3. "Whenever any nontaxable land of a restricted Indian of the Five Civilized Tribes or of any other Indian tribe is sold to any State, county, or municipality for public-improvement purposes, or is acquired, under existing law, by any State, county, or municipality by condemnation or other proceedings for such public purposes, or is sold under existing law to any other person or corporation for other purposes, the money received for said land may, in the discretion and with the approval of the Secretary of the Interior, be reinvested in other lands selected by said Indian, and such land so selected and purchased shall be restricted as to alienation, lease, or incumbrance, and nontaxable in the same quantity and upon the same terms and conditions as the non-taxable lands from which the reinvested funds were derived, and such restrictions shall appear in the conveyance. Mar. 2, 1931, c. 374, 46 Stat. 1471; June 30, 1932, c. 333, 47 Stat. 474."

"This measure extends the Five Civilized Tribes law relating to Indian lands to Indian tribes generally. It is a departmental bill and is an emergency matter." 75 Cong.Rec. 12319 (June 8, 1932) (remarks of Senator Thomas)

■ From the plain reading of § 409a, which clearly states the restrictions shall appear in the conveyance, and from this explanation, it would appear that tax exemption under § 409a is dependent upon the land being placed under restrictions by the Secretary of the Interior.

■ Plaintiffs urge that Pourier v. Board of County Com'rs of Shannon Co., 83 S.D. 235, 157 N.W.2d 532, supports their claim of tax immunity, and they quote a clause from the opinion referring to an extension of this immunity to property purchased from the proceeds of sale or the increase (of livestock) or the exchange of property. At times, opinions include general statements that precede the determination of the issue presented, and they must be read as applied to that issue. In Pourier, plaintiffs were Oglala Sioux Indians who had received allotments and used them to buy cattle; they resided on the Pine Ridge Indian Reservation and the cattle were all maintained within the reservation. The court, clearly referring to that personal property, stated the law applicable thereto as follows:

" 'Indians and Indian property on an Indian reservation are not subject to State taxation except by virtue of express authority conferred upon the State by act of Congress.' "

The requirement that the property be on a reservation excludes real estate outside its boundaries.

■ Expressly asserted, though woven through many of the plaintiffs' arguments, is the claim that as the original tract of land to which the United States held title in trust for allottee Nanette was then exempt from state taxation the proceeds from the sale thereof and later purchase of the Herrick lots therefrom continued this tax exemption. Johnson v. Board of Com'rs of Yankton County, 61 S.D. 372, 249 N.W. 683, an opinion not

cited by either counsel, involved a similar situation and claim of the trust fund theory. There, Johnson was an incompetent World War veteran who was awarded compensation under the World War Veterans' Act (38 U.S.C.A. § 421 et seq.). His sister as guardian received this compensation and used part of it to purchase real estate on which the veteran lived and was cared for by her. Taxes were levied on it by Yankton County, and application was made to abate them claiming, as in the case at bar, that as the compensation was exempt from taxation it was "in the nature of trust funds" used for the purchase of the real estate and it therefore was exempt from taxation under 38 U.S.C.A. § 454. That section provided the compensation was not subject to claims of creditors and "shall be exempt from all taxation."

This court in the Johnson opinion on July 7, 1933, decided that even though the compensation was exempt from taxation the real estate purchased from it was not exempt. Later, when that same issue was presented to the United States Supreme Court, it came to the same conclusion. Trotter v. Tennessee, December 4, 1933, 290 U.S. 354, 54 S.Ct. 138, 78 L.Ed. 358, and Lawrence v. Shaw, March 1, 1937, 300 U.S. 245, 57 S.Ct. 443, 81 L.Ed. 623, 108 A.L.R. 1102. The Lawrence opinion stated its holding in the Trotter appeal as "that land purchased by the guardian with such moneys (the tax exempt compensation received from the government as a World War veteran) was not exempt" from taxation.

In the Trotter opinion, Justice Cardozo, for a unanimous court, wrote:

> "Exemptions from taxation are not to be enlarged by implication if doubts are nicely balanced. * * * we think it very clear that there was an end to the exemption when they lost the quality of moneys and were converted into land and buildings."

See also United States v. Mummert, 8 Cir., 15 F.2d 926, and Work v. Mummert, 8 Cir., 29 F.2d 393.

Plaintiffs' claim of exemption under Article XXII of the South Dakota Constitution has no merit. It follows that the judgment appealed from should be and is affirmed.

DUNN, C. J., and WOLLMAN and DOYLE, JJ., concur.

WINANS, J., dissents.

BIEGELMEIER, Retired Justice, who at the time of oral argument was a member of the court, sitting for COLER, J., who was not a member of the court at the time this case was orally argued and did not participate.

WINANS, Justice (dissenting).

I would reverse the trial court. This case involves the sale of' land held in trust by the United States for Indian beneficiaries and the subsequent purchase of new land with the proceeds of that sale. The issue in this case is whether the newly purchased land is impressed with the same trust as the original allotment so as to render it exempt from taxation. The circuit court ruled that the trust status of land is terminated by issuance of a patent in fee simple. This holding was premised on 25 U.S.C.A. § 349, which provides:

> "[T]he Secretary of the Interior may, in his discretion, and he is authorized, whenever he shall be satisfied that any Indian allottee is competent and capable of managing his or her affairs at any time to cause to be issued to such allottee a patent in fee simple, and thereafter all restrictions as to sale, incumbrance, or taxation of said land shall be removed."

Because title to the property in question was acquired by the Indian beneficiaries in fee simple, without notice of trust status or restrictions of any kind in the conveyance, the circuit court ruled the property became taxable under the laws of South Dakota, and that Gregory County properly levied taxes thereon.

The proceeds of the sale of the original trust allotment were held in trust by the United States. I hold that the use of these impressed proceeds to purchase new land in Gregory County caused the land so purchased to likewise be trust impressed and immune from taxation by the state or its instrumentalities.

The facts and background of this dispute may be briefly .

stated. Petitioners, Nanette Leading Fighter and David Leading Fighter, are members of the Rosebud Sioux Indian Tribe. Nanette Leading Fighter was the original allottee of a certain parcel of trust land in Todd County, South Dakota, which was sold by the Rosebud Indian Agency on April 7, 1960. The proceeds of this sale were then held in trust. On or about June 28, 1960, $1,300 of these trust funds was used to purchase real property in the town of Herrick, Gregory County, South Dakota.

Petitioner's original allotment of land in Todd County, South Dakota was received from the United States of America. The allotment was to be indefinitely held in trust for her by the United States acting as her trustee. Chap. 405, 25 Stat. 888, and Chap. 576, 48 Stat. 984, 25 U.S.C. § 462. It is a long established rule that lands held in trust by the United States are immune from local taxation. As stated by this Court:

> "The state cannot tax Indian lands that are held in trust by the United States". Lebo v. Griffith, 42 S.D. 198, 173 N.W. 840.

See also the decision of the United States Supreme Court in United States v. Rickert, 188 U.S. 432, 23 S.Ct. 478, 47 L.Ed. 532.

On April 7, 1960 the trustee, United States, at Petitioner's request, sold the realty contained in her original allotment realizing $4,400 on this sale. This amount was deposited in Petitioner's individual Indian Money account at the Rosebud office of the Bureau of Indian Affairs. Such accounts are controlled by the Secretary of the Interior or his representative who acts as an agent of the trustee United States. 25 C.F.R. § 104.1. The trial court correctly recognized that the proceeds derived from the sale of Petitioner's trust land on deposit in her Individual Indian Money account were impressed with the same trust as the original allotment. They were, therefore, likewise immune from taxation by the state or its instrumentalities. The trial court found as an undisputed fact that:

> "Nanette Leading Fighter owned certain trust land which was sold by the Rosebud Indian Agency on April

7, 1960, and the proceeds of the sale were then held in trust."

A part of these trust funds was used to purchase the real property in Herrick, Gregory County, South Dakota. It is this purchase which gives rise to the issue in the instant appeal, to-wit, whether the newly obtained land purchased with funds held in trust is impressed with the same trust as those funds, so as to render it exempt from taxation. As previously stated, I would hold that the purchased land is so impressed and thus exempt from taxation. I base this holding on the well-settled trust principle enunciated in a long line of cases both in this state and in the federal system that the corpus of a trust does not lose its trust status by a change in form; instead, the corpus retains its status as long as it is traceable back to the original trust subject.

In Pourier v. Board of County Commissioners of Shannon County, 83 S.D. 235, 157 N.W.2d 532, we held that proceeds of a sale of personal property owned by an Indian, and acquired through investment of allotted funds and land were federal instrumentalities and exempt from state taxation. The exemption extends to the proceeds of nontaxable property and to property purchased with such proceeds. We held, and correctly I believe.

"* * * this immunity extends to the increase of issue property, to property purchased from the proceeds of sale of the increase, or to property exchanged for similar use and increases therefrom so long as it can be traced and identified as such." Pourier v. Board of County Commissioners, supra, at p. 534.

Underlying this ruling is the basic policy consideration which has come to be known as the instrumentality doctrine. This doctrine asserts that, consistent with the Supremacy Clause of the United States Constitution, a state through taxation may neither "substantially impede or burden the functioning of the Federal Government". Federal Indian Law, 1958 Ed., p. 846. It is the policy of the federal government to cause to be exempt Indian trust property from state taxation to better enable Indians to remain self-sufficient. The trust property in the instant case is an instrument of this policy and as the *Pourier* court correctly

indicated, such instruments of the national government may not be taxed by the states.

While the *Pourier* decision concerned trust personalty, the instant case involves trust realty. No valid distinction can be drawn between the two types of trust property. The effect of the holding in *Pourier,* supra, on our decision in this case is in no way vitiated by the fact that a different class of property is involved. If anything, the rationale of the holding in that case can be more readily applied to the factual setting of the instant case. We stated in *Pourier* that the new property has the tax exempt trust status of the original "so long as it can be traced and identified as such". Stated otherwise, we held that as long as the new property is shown to be a derivative of the original trust allotment it is exempt. Because of the immobility of land and the relative mobility of personal property it is substantially easier to trace realty, as in the instant case, than it is to trace personalty. The case at bar, therefore, falls within the ambit of the holding in *Pourier.*

Cases on this point decided in the federal system are consistent with our ruling in *Pourier.* In Dewey County, S. D. v. United States, 8 Cir., 26 F.2d 434, property issued by the federal government to Sioux Indians or derived from issue property was levied on by Dewey County. In language similar to that later used by this Court in *Pourier,* that court stated:

"There seems to be no doubt that the property taxed was an instrumentality of the Government in carrying out its policy in behalf of these Indian wards. It belonged to the United States, whether in the original form in which it was issued or its increase, or property for which the property originally issued had been exchanged." at p. 435.

Perhaps the case which most clearly enunciates the doctrine of continuing trust status for proceeds derived from trust land is Ward v. United States, 10 Cir., 139 F.2d 79. There facts strikingly similar to those present in the instant case were examined. Funds attained from the sale of a restricted allotment were held by the Secretary of the Interior. These funds were

subsequently used to purchase new land. On the status of this land the court stated:

"In substance, there was a mere conversion of trust property. The restricted allotment was converted into funds and the funds were converted into land. Such land was charged with the same trust as the original allotment, under the well-settled principle of the law of trusts that, whenever property in its original state and form has once been impressed with a trust, no change of that state and form can divest it of its trust character, so long as it remains capable of clear identification." at p. 82.

The instant case clearly fits within the rule stated by the *Ward* court, to-wit, so long as the trust property remains capable of clear identification, no change in form can divest it of its trust character. Petitioner's property has remained capable of identification because funds from the allotment proceeds were used to purchase the property.

Each Indian allottee, pursuant to § 11 of the Act of March 2, 1889 (Chap. 405, 25 Stat. 888), under which Petitioner received her allotment, received more than just land in trust. Each also received a vested right to a tax exemption for the land, the corpus of his trust. In Choate v. Trapp, 224 U.S. 665, 32 S.Ct. 565, 56 L.Ed. 941, the state of Oklahoma sought to tax the allotments of local Indians during their trust periods. The state argued, inter alia, that allottees' tax exemption was a legislative gratuity and not a vested right, and could therefore be abrogated by an act of Congress. The United States Supreme Court disagreed and held that "[T]he provision that the land should be non-taxable was a property right, which Congress undoubtedly had the power to grant". *Choate,* supra, 224 U.S. 665, 673, 32 S.Ct. 565, 568. The decision went on to state that:

"The patent issued in pursuance of those statutes gave the Indian as good a title to the exemption as it did to the land itself. Under the provisions of the 5th Amendment there was no more power to deprive him of the exemption than of any other right in the property.

\* \* \* It is conceded that no right which was actually conferred on the Indians can be arbitrarily abrogated by statute." *Choate,* supra, at 673, 674, 32 S.Ct. at 569.

The holding in Choate v. Trapp, supra, was clarified and reemphasized in Mahnomen County, Minnesota v. United States, 319 U.S. 474, 63 S.Ct. 1254, 87 L.Ed. 1527. The Supreme Court there recognized that even though the trustee United States might give its consent to taxation, the consent of the Indian allottee was necessary before his vested right to a tax exemption would be lost because "\* \* \* under Choate v. Trapp the Indian, who has gained a 'vested right' not to be taxed, must also consent."

For purposes of this holding, it must be noted that the fact title to the land was not taken in a way to make its trust status known is not controlling because Indian beneficiaries should not be bound by the negligence of the Bureau of Indian Affairs. See Cramer v. United States, 261 U.S. 219, 234, 43 S.Ct. 342, 346, 67 L.Ed. 622, 628; United States v. Forness, 125 F.2d 928, 932—933 (2nd Cir., 1942, per Jerome Frank); and Sessions, Inc. v. Morton, 491 F.2d 854, 857 (n. 5).

I would hold that in the absence of clear evidence that Petitioner gave a knowing consent to the loss of her vested right to a tax exemption we should assume that she gave no such consent. She should not, therefore, lose her exemption because the Bureau of Indian Affairs failed to make the continuing trust character of the land known in the conveyance. This result flows from the application of several rules. Congress has placed the burden of proof upon non-Indians in all trials concerning ownership of property. This was codified at 25 U.S.C. § 194 which provides:

> "In all trials about the right of property in which an Indian may be a party on one side, and a white person on the other, the burden of proof shall rest upon the white person, whenever the Indian shall make out a presumption of title in himself from the fact of previous possession or ownership."

Note 1, appended to this statute, clearly states the purpose of this section:

> "This section is evidence of the policy of the Government to give Indians the benefit of the doubt on questions of fact or construction of treaties or statutes relating to their welfare."

Certainly the issue of consent in this case is a question of fact which is ambiguous at best. Pursuant to the burden of proof enunciated in 25 U.S.C. § 194, this Court must give Petitioner the benefit of the doubt as to this issue. That tax exemptions are to be strictly construed is a general rule of construction. The contrary rule, however, applies to Indians.

The majority opinion quotes from Trotter v. Tennessee, 1933, 290 U.S. 354, 54 S.Ct. 138, 78 L.Ed. 358, an opinion by Justice Cardozo. The quotation omits an important thought by that noted jurist. The part pertinent to this case is as follows:

> "Exemptions from taxation are not to be enlarged by implication if doubts are nicely balanced. Chicago Theological Seminary v. Illinois, 188 U.S. 662, 674, 23 S.Ct. 386, 47 L.Ed. 641 [649]. *On the other hand, they are not to be read so grudgingly as to thwart the purpose of the lawmakers.*" (emphasis supplied)

Sale of their allotted parcel and subsequent purchase of different land would mean loss of their tax exemption with the attendant risk of loss of their new land. Such a risk would clearly discourage those Indians who wish to live in the larger society outside the confines of the reservation. This, I believe, was not the intention of Congress in its Indian policy. Nor do I believe this holding to be unfair to the larger society or that it poses any threat to our system of taxation.*

---

* It is interesting to observe one effect of my holding as applied to this particular case. Upon sale by Petitioner, I would assume her original allotment of land worth $4,400 became taxable. Of that amount only $1,300 was reinvested. It can, therefore, be assumed that due to this transaction $3,100 worth of additional land was added to South Dakota's tax base.