## DEWEY COUNTY, S. D. v. UNITED STATES.*

Circuit Court of Appeals, Eighth Circuit.
May 21, 1928.

No. 7743.

1. **Taxation** ⟨⟩6—**Personalty issued to Indians and increase thereof held "instrumentality of United States," not subject to state taxation (Act March 2, 1889, § 17 [25 Stat. 888]).**

Under Act March 2, 1889 (25 Stat. 888), personal property issued to Sioux Indians of Cheyenne River band under section 17, and increase thereof, or property for which property issued had been exchanged, *held* to constitute "instrumentality of United States" in carrying out its policy in behalf of its Indian wards, and not subject to taxation by state.

2. **Taxation** ⟨⟩4—**Indians' exercise of rights of citizenship held not to authorize state to tax their property, termination of national guardianship being exclusively with Congress.**

That Sioux Indians of Cheyenne River band are permitted to exercise right of franchise, and their children admitted to public schools of county maintained by taxation, and public highways built and maintained at public expense through territory occupied by them, *held* not to authorize state to subject their property to taxation; question when national guardianship of such Indians shall terminate resting exclusively with Congress.

3. **Indians** ⟨⟩27(1)—**United States held entitled to maintain suit against county to recover taxes illegally collected from Indians.**

United States *held* entitled to maintain suit against county to recover personal property taxes illegally collected from Sioux Indians of Cheyenne River band.

*Rehearing denied Aug. 8, 1928.

In Error to the District Court of the United States for the District of South Dakota; James D. Elliott, Judge.

Action by the United States against Dewey County, S. D., a municipal corporation. Judgment for plaintiff (14 F.[2d] 784), and defendant brings error. Affirmed.

. Frank McNulty, of Long Beach, Cal. (Peter M. Burns, of Timber Lake, S. D., and R. F. Williamson, St. Clair Smith, and Alan Williamson, all of Aberdeen, S. D., on the brief), for plaintiff in error.

Byron S. Payne, Asst. U. S. Atty., of Pierre, S. D. (Olaf Eidem, U. S. Atty., and Frank G. McCormick, Asst. U. S. Atty., both of Sioux Falls, S. D., on the brief), for the United States.

Howard G. Fuller, of Pierre, S. D., for Cheyenne Band of Sioux Tribe.

Before LEWIS and KENYON, Circuit Judges and KENNEDY, District Judge.

LEWIS, Circuit Judge. The United States recovered judgment against Dewey County, South Dakota, for the amount of taxes and penalties that had been levied by county officials on certain personal property found in the possession of Sioux Indians who were members of the Cheyenne River band and registered at the Cheyenne River Agency. The property taxed consisted of horses, cattle and farm implements; and as to one Indian his household furniture was included, as to another improvements on his land, and as to another money due him at the Agency. Aside from the item of improvements on land it was shown that all the property levied on had been issued by the United States to the Indian in whose name it was taxed or was the increase of such property, or had been issued to another member of the Tribe, or the increase thereto, and had been acquired by gift, trade or otherwise. Under the statute of South Dakota taxes levied on personal property are a lien on all personal property of the taxpayer and may be made a lien on his land by designated filings to be made by the tax officials. These filings were made. The Indians ignored notices to pay the assessments. But later, and after fee patents were issued to them for their allotments, they found they could not sell or mortgage their lands without discharging the tax liens, and to do so they were compelled to pay and did pay the taxes assessed with added penalties.

The status of these Indians appears to be that shown by the Act of March 2, 1889 (25 Stat. 888). By that act Congress di-

vided the Great Reservation of the Sioux Nation in the territory of Dakota into several smaller reservations, one of which was delineated and designated Cheyenne River Reservation, and those of the Indians who remained in that reservation were required to register at the Cheyenne River Agency where they were to receive their rations and annuities. Section 17 of the act made appropriation for the purchase of live stock, wagons, plows, other farm implements and utensils to be divided and given to heads of families and single persons over the age of 18 years who might take allotments in severalty. As to the personal property to be issued it was provided: "No sales, barters, or bargains shall be made by any person other than said Indians with each other, of any of the personal property hereinbefore provided for, and any violation of this provision shall be deemed a misdemeanor," etc. The act provided for the maintenance of schools and the instruction of the Indians in agriculture. It appropriated $3,000,000 and set that sum aside with the requirement that interest thereon at the rate of five per cent. should be used under the direction of the Secretary of the Interior for the use of the Indians in accordance with his judgment.

[1] There seems to be no doubt that the property taxed was an instrumentality of the Government in carrying out its policy in behalf of these Indian wards. It belonged to the United States, whether in the original form in which it was issued or its increase, or property for which the property originally issued had been exchanged. United States v. Thurston County (C. C. A.) 143 F. 287; United States v. Rickert, 188 U. S. 432, 23 S. Ct. 478, 47 L. Ed. 532. The jurisdiction of the United States over the subject was exclusive and the levies made under the claimed authority and power of the State were void. And the county having exacted the money without right was bound to make restitution. United States v. Gray, 119 C. C. A. 529, 201 F. 291; Ward v. Love County, 253 U. S. 18, 40 S. Ct. 419, 64 L. Ed. 751. Really, so far, there seems to be nothing seriously said to the contrary.

[2] But it is contended that inasmuch as these Indians are now permitted to exercise the right of franchise, their children admitted to the public schools of the county maintained by taxation and public highways built and maintained at public expense through the territory which they occupy, their property should now be subject to taxation. But it is not within the right and power of the State or its municipal subdivisions

to decide when the National guardianship shall come to an end and the policy of the United States in the protection of its wards shall cease. Emancipation rests exclusively with Congress. United States v. Nice, 241 U. S. 591, 36 S. Ct. 696, 60 L. Ed. 1192.

[3] It is plain that the United States has the right to maintain this suit. Cramer v. United States, 261 U. S. 219, 232, 233, 43 S. Ct. 342, 67 L. Ed. 622; United States v. Gray, supra.

The judgment is affirmed.