EMPLOYMENT SECURITY DEPARTMENT, Appellant

v.

CHEYENNE RIVER SIOUX TRIBE, Respondent

(119 N.W.2d 285)

(File No. 9984. Opinion filed January 24, 1963)

**Alan Williamson,** Asst. Atty. Gen., **A. C. Miller,** Atty. Gen., Pierre, on the brief for Appellant.

**William Howard Payne,** Washington, D.C., **Blaine Simons,** Sioux Falls, on the brief for Respondent.

BIEGELMEIER, J. This action to collect contributions to the state's unemployment trust fund was dismissed by the trial court.

The complaint alleges defendant, a tribe of American Indians, from 1954 through 1960, was an employer under the definitions of Ch. 17.08 SDC 1960 Supp. and as such employer paid to its employees taxable wages of $568,147.58 upon which defendant became liable for contributions to the unemployment compensation fund in the sum of $15,339.97 with interest.

Defendant gave notice of special appearance and moved to vacate service of summons and complaint or in the alternative dismiss the action, asserting lack of jurisdiction of the circuit court for the reason that an Indian tribe was not subject to suit without consent and neither it nor the United States had given consent to the suit. At a hearing the circuit court did not enter order vacating service of summons but did sign an order dismissing the action.

The present "Federal Unemployment Tax Act", Ch. 23 of Title 26 U.S.C.A., is part of the Social Security Act of August 14, 1935. It levied an excise tax on certain employers measured by prescribed percentages of wages payable during the calendar year. If the taxpayer has made contributions, as they are called, to an unemployment fund under an approved or certified state law, he may credit not to exceed 90% thereof against the federal tax. The history of the act and some of its provisions are related in Steward Mach. Co. v. Davis, 301 U.S. 548, 57 S.Ct. 883, 81 L.Ed. 1279, 109 A.L.R. 1293. Its terms induced, if not coerced, the

states to enact such laws as part of the cooperative endeavor to relieve the economic hardship of the jobless employee. South Dakota passed its Unemployment Compensation Act in 1936. Ch. 3, 1936 Spec. Session Laws. It requires payments or contributions to the state unemployment compensation fund of 90% of the federal excise tax, is now SDC 17.08—SDC 1960 Supp. 17.08 and known as the Employment Security Law.

It is noted that while both SDC 17.0825 and SDC 1960 Supp. 17.0825 state the collection of contributions thereon from any defaulting employer shall be by civil action in the name of the State of South Dakota, the action is titled The Employment Security Department thereof; no issue was raised as to this irregularity nor to the clerk's filing of the order appealed from without formally attesting it.

The relationship of Indians to our dual system of government has presented a varied and complex question. Federal Indian Law, G.P.O.1958. The original status of this once numerous, aboriginal people has been described as one of pupilage and tutelage under the government resembling that of guardian and ward. In an early opinion by Chief Justice Marshall, Indian tribes were denominated as domestic dependent nations, Cherokee Nation v. State of Georgia, 1831, 5 Pet. 1, 30 U.S. 1, 8 L.Ed. 25, and later as distinct, independent, political communities, Worcester v. State of Georgia, 1833, 6 Pet. 515, 31 U.S. 515, 8 L.Ed. 483, yet subject to the irresistible power of the national government.

While these relations of the Indians and their status were the result of a host of treaties and congressional acts, it is now established that Congress has plenary authority over the Indian and all their tribal relations with full power to legislate concerning tribal property. Winton v. Amos, 1921, 255 U.S. 373, 41 S.Ct. 342, 65 L.Ed. 684; Board of County Commissioners, etc. v. Seber, 1943, 318 U.S. 705, 63 S.Ct. 920, 87 L.Ed. 1094.

That Indian tribes cannot be sued without the consent of Congress expressly authorized seems to be the uniform course of decisions of the United States courts. Thebo v. Choctaw Tribe of Indians, 8 Cir., 1895, 66 F. 372; Adams v. Murphy 8 Cir, 1908,

165 F. 304; Turner v. United States, 1919, 248 U.S. 354, 39 S.Ct. 109, 63 L.Ed. 291; United States v. United States Fidelity & Guaranty Co., 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894, reversing 10 Cir., 106 F.2d 804. See also Iron Crow v. Oglala Sioux Tribe of Pine Ridge Reservation, South Dakota, 8 Cir., 1956, 231 F.2d 89.[1]

The Thebo opinion states the basis on which this result is reached:

> "The political departments of the United States government, by treaties, by acts of congress, and by executive action, have always recognized the Choctaw Nation 'as a state, and as a distinct political society, separate from others, and capable of managing its own affairs and governing itself'; and the courts are bound by these acts of the political departments of the government." 66 F. at 374.

In the Iron Crow opinion, supra, it was written:

> "It would seem clear that the Constitution, as construed by the Supreme Court, acknowledges the paramount authority of the United States with regard to Indian tribes but recognizes the existence of Indian tribes as **quasi** sovereign entities possessing all the inherent rights of sovereignty excepting where restrictions have been placed thereon by the United States itself." 231 F.2d at 92.

That decision which recognized Indian tribal authority in certain areas with power to punish for offenses against the Revised Code of the Sioux Tribe and to levy taxes on grazing rights results in the existence of three forms of government within the geographical confines of this state, viz., the United States of America, the State of South Dakota and Indian Tribes.

The complaint may be accepted as stating a cause of ac-

---

1. In United States v. United States Fidelity & Guaranty Co., supra, it was said the immunity of Indian tribes as sovereigns passed to the United States for their benefit and the exemption from suit existed without congressional authorization. It is not claimed any such act exists. Extended discussion of the history and application of the principle involved appears in the cited opinions.

tion[2] and, for aught that appears, ·defendant Tribe may be engaging in business in competition with other citizens of South Dakota, yet unless Congress enacts a statute authorizing, or consenting to, actions to enforce the claimed liability, the courts of this state have no jurisdiction of the Tribe in this civil action. The order must be and is affirmed.

All the Judges concur.

---

2. Counsel submitted additional briefs on the construction of the Federal Unemployment Tax Act, the complementary South Dakota Unemployment Security Law and amendments thereto and argued the question whether they were meant to apply to the Indian Tribe. Defendant claims it is an instrumentality of the United States whose employment is excepted by 26 U.S.C.A. § 3306 (c) (6); plaintiff asserts defendant may be required to make contributions by a cognate section of 26 U.S.C.A. § 3305 (b) which provides the state may require such instrumentalities to make contributions unless specifically excepted by a congressional act. Two requirements must be met before an Indian tribe may be adjudged liable: (a) a substantive right and (b) consent to suit by congressional act by designation of a forum to hear the claim or otherwise evidence consent to suit. In Turner v. United States, supra, Congress had provided the forum but recovery was denied for lack of a substantive right. In view of our conclusion that defendant is presently immune from suit, it can be assumed, without deciding (and as the motion to dismiss admits) that legal liability exists for the tax or contribution.