POURIER et al., Respondents v. BOARD OF COUNTY COMMISSIONERS OF SHANNON COUNTY, Appellants

(157 N.W.2d 532)

(File No. 10411. Opinion filed March 28, 1968)

**Allen G. Wilson,** State's Atty., Hot Springs, for defendants and appellants.

**H. R. Hanley,** Rapid City, for plaintiffs and applicants, and respondents.

HANSON, Presiding Judge.

This tax abatement proceeding involves the legality of personal property taxes assessed and levied by Shannon County on Indian owned cattle within an Indian Reservation.

Applicants, John Pourier, Jr., and Loren Pourier, are ranchers residing on the Pine Ridge Indian Reservation. They and their wives are members of the Oglala Sioux Tribe. Each received Sioux Indian Benefit Property Allotments which were used to establish cattle herds.

John Pourier, Jr., received his Benefit Allotment in 1918. He also received a land allotment and in addition leases land within the reservation upon which he maintains his herd. His cattle have been used as security for a loan from a private bank in Rapid City.

Loren Pourier received his Indian Benefit in 1941 with which he purchased some cows. He has never received a land allotment, but maintains his herd on leased land within the reservation. At one time he purchased some herd bulls with an FHA loan. His cattle have also been used as security for a loan from a private bank at Rapid City.

Since receiving their Sioux Benefit Allotments applicants have continuously ranched and raised cattle on the Pine Ridge Reservation. Their present herds consist of increases from the original cattle purchased from allotment money or from tribal loans. On November 18, 1964 some of their cattle were sold at the Kimball Livestock Auction and the proceeds of sale levied upon by Shannon County for delinquent personal property taxes assessed against applicants for the years 1956 to 1964. With respect to John Pourier, Jr., the county distrained and now retains the sum of $7,422.00 and in the case of Loren Pourier the sum of $574.53 was distrained and is now retained. Applications for abatement were denied by Shannon County and appeals were taken to circuit court. The court granted the applications and ordered the money collected by the county be returned together with interest at the legal rate of interest from November 18, 1964.

The county appeals claiming applicants' cattle are taxable personal property because: (1) The beneficial purpose of the original Sioux Benefit issue has long since been served or defeated; (2) the cattle do not have the character or tax exemption status of Indian trust property; (3) applicants enjoy unrestricted ownership and have used their cattle as security for private loans; (4) applicants have been granted the privileges of full citizenship and should share its tax burden; and (5) they are subject to pay Federal Income Taxes.

■ The power of a state to tax is coextensive with its sovereign power to control the objects and subjects of taxation. M'Culloch v. State of Maryland, 4 Wheat. 316, 4 L.Ed. 579. Presently, this state's jurisdiction and power to legislate and control tribal Indians and their property on or within Indian reservations is minimal. Smith v. Temple, 82 S.D. 650, 152 N.W.2d 547. The plenary and exclusive power of the Federal Government to regulate Indian affairs was recognized recently by this court in considering another phase of state taxation affecting Indians, Employment Sec. Dept. v. Cheyenne River Sioux Tribe, 80 S.D. 79, 119 N.W.2d 285. It follows, according to an acknowledged authority on Indian law, that "Indians and Indian property on an Indian reservation are not subject to State taxation except by virtue of express authority conferred upon the State by act of Congress." Federal Indian Law, 1958 Ed., p. 845.

■■ Indian property has also been held immune from state taxation as an instrumentality of the Federal Government. This concept is "founded upon the premise that the power and duty of governing and protecting tribal Indians is primarily a Federal function, and that a State cannot impose a tax which will substantially impede or burden the functioning of the Federal Government." Federal Indian Law, 1958 Ed., p. 846, and see United States v. Rickert, 188 U.S. 432, 23 S.Ct. 478, 47 L.Ed. 532; United States v. Pearson, 8 Cir., 231 F. 270; Dewey County, S.D. v. United States, 8 Cir., 26 F.2d 434, cert. den. 278 U.S. 649, 49 S.Ct. 94, 73 L.Ed. 561; United States v. Thurston County, Neb., 8 Cir., 143 F. 287; United States v. Wright, 4 Cir., 53 F.2d 300, cert. den. 285 U.S. 539, 52 S.Ct. 312, 76 L.Ed. 932; Morrow v. United States, 8 Cir., 243 F. 854; concurring opinion of Judge Gates in Lebo v. Griffith, 42 S.D. 198, 173 N.W. 840; Olney v. McNair, 105 Wash. 18, 177 P. 641. According to this concept personal property belonging to tribal Indians purchased with money of the Government "was furnished to the Indians in order to maintain them on the land alotted during the period of the trust estate, and to induce them to adopt the habits of civilized life. It was, in fact, the property of the United States, and was put into the hands of the Indians to be used in execution of the purpose of the government in reference to them. The assess-

ment and taxation of the personal property would necessarily have the effect to defeat that purpose." United States v. Rickert, supra. For the same reason this immunity extends to the increase of issue property, to property purchased from the proceeds of sale of the increase, or to property exchanged for similar use and increases therefrom so long as it can be traced and identified as such. United States v. Pearson, supra. This case also recognized, as an elementary principle, that courts cannot terminate the trusteeship of the United States which "will continue until such time as the United States sees fit to terminate the relation of guardian and ward between itself and the said Indians."

The nonexemption of Indians from federal income taxation is without significance on the power of a state to tax personal property owned by tribal Indians and located within Indian reservations. Taxation of Indians by the Federal Government does not impliedly authorize taxation by the state. Taxation or exemption of Indians by either the Federal Government or by the State is a matter for Congressional resolution. For this reason, the contentions made by the county should properly be directed to the Congress of the United States. As the court observed in United States v. Rickert, supra, "It is said that the state has conferred upon these Indians the right of suffrage and the other rights that ordinarily belong only to citizens, and that they ought, therefore, to share the burdens of government like other people who enjoy such rights. These are considerations to be addressed to Congress. It is for the legislative branch of the government to say when these Indians shall cease to be dependent and assume the responsibilities attaching to citizenship. That is a political question, which the courts may not determine."

Applicants were entitled to an abatement of their taxes in accordance with SDC 57.0801 which provides: "* * * if any person, against whom an assessment has been made or a tax levied, claims such assessment or tax or any part thereof to be invalid for any reason herein stated, the same may be abated, or the tax refunded if paid, and the board of county commissioners is authorized and empowered to abate or refund, in

whole or in part, such invalid assessments or taxes in the manner hereinafter prescribed and in the following cases only:

*    *    *    *    *    *

(3) When the complainant or the property is exempt from the tax".

■■■ Pursuant to SDC 12.0618, applicants appealed from the decision of the Board of County Commissioners denying their applications. In its decision the circuit court correctly concluded the tax abatement applications should have been granted. This was the extent of its power and authority. However, the court entered a money judgment in favor of John Pourier, Jr., against Shannon County for the sum of $7,422.00 together with interest thereon and a like judgment in favor of Loren Pourier in the amount of $574 together with interest. This proceeding does not involve a refund of taxes and the court was without authority to enter a money judgment against the county. The question of allowable interest is therefore moot.

The judgment appealed from is reversed with instructions to enter a judgment in conformity to this opinion. No costs shall be allowed.

RENTTO, BIEGELMEIER and HOMEYER, JJ., concur.

ROBERTS, J., dissents in part.

ROBERTS, Judge (dissenting in part).

SDC 57.0801 provides that, unless otherwise provided, if any person against whom an assessment has been made or a tax levied claims that the whole or any part thereof is invalid for any reason therein stated, the tax may be abated or refunded, if paid, "in the following cases only":

"(1) When an error has been made in any identifying entry or description of the property, in entering the valuation thereof or in the extension of the tax, to the injury of the complainant;

"(2)  When improvements on any real property were con-
sidered or included in the valuation thereof, which
did not exist thereon at the time fixed by law for
making the assessment;

"(3)  When the complainant or the property is exempt
from the tax;

"(4)  When the complainant had no taxable interest in
the property assessed against him at the time fixed
by law for making the assessment;

"(5)  When taxes have been erroneously paid or error
made in noting payment or issuing receipt therefor;

"(6)  When the same property has been assessed against
the complainant more than once in the same year,
and the complainant produces satisfactory evi-
dence that the tax thereon for such year has been
paid; provided that no tax shall be abated on any
real property which has been sold for taxes, while
a tax certificate is outstanding."

SDC 57.0803 provides that applications for abatements or
refunds "shall set out one or more of the grounds for abatement
or refund specified" in the abatement and refund statutes "and
relied on by the applicant". SDC 57.0807 grants a right of ap-
peal to the circuit court from a decision of the board of county
commissioners in the matter of abating or refunding taxes as
other appeals may be taken from decisions of a board of county
commissioners. The decisions of such board within the scope of
its statutory authority are quasi judicial and thus are appealable
and are "heard and determined 'de novo' " as provided in sec-
tions 12.0618 to 12.0620, both inclusive, of the Code of 1939. "In
these cases", said this court in Williams v. Stanley County, 69
S.D. 118, 7 N.W.2d 148, "the issues to be tried in the Circuit
Court are the issues presented by the record of the Board and
passed on by it. The powers of the court in such cases are the
same as those possessed by the Board."

SDC 57.0901 (payment of taxes under protest and action for recovery) originated as Chapter 289, Laws 1915. Two years after the inception of this suit statute, there was enacted the abatement and refund statute, Chapter 130, Laws 1917, which with certain exceptions is now contained in Section 57.0801. The latter statute was considered by Brown, J., in Security National Bank v. Twinde, 52 S.D. 352, 217 N.W. 542. This court said: "that section is, by its express terms, applicable only in the cases therein enumerated, and is evidently designed to include only situations where the invalidity of the tax can be ascertained from the county records or from few and easily obtained facts aliunde, while for cases in which the legality or illegality of the tax necessarily involves the determination of questions of law calling for the exercise of strictly judicial functions, payment under protest and the other provisions of the suit statute afford the exclusive remedy." This language was quoted with approval and the reasoning followed in Fiman v. Hughes County, 55 S.D. 204, 225 N.W. 711.

The obvious purpose of enacting section 57.0801 was to provide an administrative procedure for the correction of the mistakes and irregularities in the assessment or collection of taxes specially set forth therein and not to clothe the board of county commissioners with power to consider and determine questions strictly of a judicial nature. The legislature acted within its authority in prescribing conditions and limitations on which an abatement or refund may be had and since the statute conferred a right not theretofore existing an applicant seeking relief under the statute must bring himself within its provisions.

The record does not contain a "complete transcript of the proceedings of the board relating to the matter of its decision" (SDC 12.0619) and this court cannot determine from the record the grounds relied on by respondent applicants for relief. The majority concludes that the applications here were for abatements and should have been granted under the provisions of subsection 3, § 57.0801. This court in Fiman v. Hughes County, supra, undertook an interpretation of the term "exempt from the tax" as used in subsection 3. In that case the applicant sought

a refund on the ground that stockholders of a national bank could not be assessed and taxed on the value of their shares of stock as other personal properties because of the provisions of a federal statute. This court affirming the judgment of the circuit court denying recovery said: "Appellant would have the board of county commissioners determine, among other things, whether property clearly not exempt by any express language of South Dakota statutes and clearly taxable by the express language of section 5219, U.S.Rev.Stat. (12 U.S.C.A. § 548) is nevertheless tax exempt by reason of other federal statutes. This would involve an extension of the applicability of section 6813 far beyond its limits as defined in Security Nat. Bank v. Twinde, supra."

SDC 57.0310 provides that "All * * * personal property in this state * * * except such as is hereinafter expressly excepted, is subject to taxation". The properties here in question were not excepted by statute from taxation. It is generally held than an exemption of private property from taxation presupposes liability to assessment and applies only to a grant of immunity by virtue of constitutional or statutory provisions. 84 C.J.S. Taxation § 215. The provisions of the abatement and refund statute have been construed in two cases which are of controlling force. This court indicates that such statute providing for performance of statutory duties by a quasi judicial board and judicial review of its action should be construed to attain that end and not be extended beyond its administrative features.

The court below proceeded in the same manner as if proceedings or an action at law had been commenced by service of summons, heard evidence and adjudicated issues not purportedly presented by the record of the board of county commissioners. The court entered money judgment against the county apparently on the theory that the county had prevented by legal process the payment of the full amount of the purchase price of cattle sold by respondents to a third party. The court found, among other things, that assessments and levies of taxes on the cattle sold were invalid for the reason "that said cattle were and

are exempt from taxation by the state of South Dakota and its political subdivisions and taxing authorities." The board of couny commissioners and the circuit court on appeal could not grant relief beyond the applicability of section 57.0801 as construed by prior holdings of this court and judicially determine the legality or illegality of the assessments and tax levies in question.

The judicial determination by this court of the illegality of the assessments and levies involved and its mandate to enter judgment is an extension of the applicability of section 57.0801 beyond the authority conferred by the legislature. The fact that the parties argued in this court the merits does not confer jurisdiction. If a circuit court is without jurisdiction of the subject matter of litigation, this court does not acquire jurisdiction thereof on an appeal and has authority only to dismiss. Darnall v. State, 79 S.D. 59, 108 N.W.2d 201. I would reverse the judgment below and for reasons stated remand the cause to the trial court with directions to dismiss the proceedings.