[No. 41126.    En Banc.    January 21, 1971.]

FRANCES ELLIOTT SOHOL, *Respondent,* v. ROBERT J. CLARK *et al., Appellants.** 

*Reported in 479 P.2d 925.

*The Attorney General, J. Richard Duggan, Timothy R. Malone,* and *Michael B. Hansen, Assistants,* for appellants.

*Froberg & Rutledge,* for respondent.

STAFFORD, J.—In 1965 Frances Elliott Sohol commenced an action to enjoin Clallam County and its treasurer from collecting an ad valorem personal property tax levied against the buildings and furnishings of the Shoreline Resort, pursuant to RCW 84.04.080. She also sought to enjoin them from selling the property to collect the tax and from levying any further personal property taxes against the resort, buildings and furnishings while owned and controlled by her.

A judgment in favor of the defendants was reversed and the cause remanded for new trial in *Sohol v. Clark,* 71 Wn.2d 664, 430 P.2d 548 (1967). Pending the new trial, plaintiff paid all taxes under protest. The defendants now appeal from a judgment in favor of the plaintiff.

Plaintiff is a member of the Quinault Indian Tribe who, although married to a non-Indian, has remained active in Quinault tribal affairs. In 1932 she was given a trust patent in 80 acres of land on the Quinault Indian Reservation which land the United States has continued to hold in trust for her. She has never received a certificate of competency from the Secretary of the Interior.

Contrary to the defendants' contention, there is substantial evidence to support the trial court's finding that plaintiff is an "unemancipated" Indian who has maintained her tribal connections. While her status might have been described more accurately as "noncompetent", *United States v. Nez Perce County,* 267 F. 495 (Idaho 1917), the incorrect terminology lends no weight to defendants' first two assignments of error.

Sometime prior to 1957, Wilbur Nowak and Marcus Westby (both non-Indians) purchased the Shoreline Resort, a business which consisted of some cabins, outbuildings, miscellaneous furnishings and equipment. All improvements were located on trust patent land leased from the Quileute Indian Tribe. On January 1, 1961, they renewed the lease for an additional 10 years, with the required approval of the Secretary of the Interior.

In 1963, plaintiff purchased the resort, its cabins, outbuildings, furnishings, and an assignment of the Nowak-Westby interest in the lease. The assignment was approved by both the Quileute Tribe and the Secretary of the Interior, as required. Subsequently, the Nowak-Westby interest in the business, the buildings and furnishings was transferred to plaintiff by a bill of sale secured by a chattel mortgage. Plaintiff made an initial downpayment of $5,500 on a total purchase price of $34,000.

The downpayment was derived from the sale of timber from plaintiff's 80-acre allotment of trust patent lands within the Quinault Indian Reservation. The timber contract and funds derived therefrom were handled entirely by the Bureau of Indian Affairs, and, subject to its discretion, were disposed of for her benefit as required by 25 U.S.C. § 406(a) (1964); 25 C.F.R. § 141.1, *et seq.* (1970); U.S. Dep't of the Interior, Federal Indian Law, at 822-824, 832, 833 (Rev. ed. 1958). All additional funds applied to payment of the balance of the purchase price, as well as the payment of annual ground rental to the Quileute Tribe, were derived from her operation of the resort business.

In February of 1966, plaintiff and the Quileute Tribe negotiated a new 25-year lease of the same land. The lease was prepared by the bureau and had the required approval of the Secretary of the Interior.

During the entire period of time here in question, plaintiff has been the sole lessee of the Indian land upon which the resort is situated and the sole owner of all improvements and equipment located thereon. She has operated the business and controlled its assets. Her non-Indian husband has claimed no interest therein.

Defendants assert the trial court erred by finding plaintiff "discloses the income from the resort" for income tax purposes. The contention is correct, in a limited sense. She has not disclosed the *amount* of her derived income, only the fact of *receiving* it. The thrust of the complete finding of fact, however, is not whether the income from the resort has or has not been *disclosed,* but whether she has claimed it as her separate property, as income derived from her ownership and operation of the resort, as an Indian on an Indian reservation and, thus, allegedly exempt from federal income tax. The error, if any, is harmless.

■ Another issue presented by several of the defendants' assignments of error is whether the resort, cabins, outbuildings, other improvements and their contents are personal property subject to the tax in question or whether they are exempt from taxation as permanent improvements located on allotted and restricted Indian lands. The answer is found in the several leases. Each provides, in varying ways, that the lessee is empowered to remove any buildings owned by her at any time within 60 days of the expiration of the lease. The current lease also provides:

> any lease heretofore made or now existing between the parties . . . is null, void . . . and completely superseded by this lease without hereby vesting title to the Lessor concerning any improvements on the premises now owned by Lessee.

Further, plaintiff has acknowledged that she has a right to remove any improvements even though she does not intend to do so.

The trial court erred by holding that the resort cabins were so connected with the realty that "any possible transfer by the plaintiff concerning the resort cabins . . . is subject to a restriction against alienation imposed by the United States." The evidence is to the contrary. In *Makah Indian Tribe v. Clallam County,* 73 Wn.2d 677, 682, 440 P.2d 442 (1968), we considered almost identical property held by an Indian lessee under similar circumstances. We held:

> All of the property which Clallam County seeks to

tax under RCW 84.04.080 . . . *should be regarded as personal property in the form of removable buildings and structures and their contents, including furniture, furnishings,* restaurant furniture and equipment, motel furniture and furnishings.

(Italics ours.) We hold here that the property in question should be regarded as personal property in the form of removable buildings and structures and their contents, including furniture and furnishings. As personal property it is not subject to a restriction against alienation.

█ As we indicated in *Sohol v. Clark, supra,* taxation of plaintiff's property (including the leasehold) under these circumstances would not constitute an interference with established federal policy[1] unless she entered into the business endeavor pursuant to some federal program designed to further economic independence among Indians. The record convinces us that plaintiff, a Quinault Indian, did enter into the resort business pursuant to such a program and that she continuously maintained, controlled and operated the resort on the Quileute Indian Reservation with the authorization of the Quileute Tribe, the Secretary of the Interior and the direct assistance of the bureau.

As previously indicated, sometime prior to her purchase of the resort, the bureau, acting on her behalf as a non-competent Indian, sold timber from her allotted trust patent lands. Subject to the discretion of the bureau, the funds so acquired were disposed of for her benefit. The $5,500 down-payment on the resort was derived from those funds. All subsequent payments on the deferred balance of the $34,000 purchase price have been paid from the income derived from her operation of the resort.

---

[1] It is no longer the rule that a tax upon the leasehold interest of one who leases allotted and restricted Indian lands is a tax upon the power to lease and thus promote destruction of that power. The theoretical burden which the tax imposes on such lands is too remote and indirect to justify immunity *for that reason alone. Oklahoma Tax Comm'n v. Texas Co.,* 336 U.S. 342, 93 L. Ed. 721, 69 S. Ct. 561 (1949), overruling *Choctaw, Okla. & Gulf R.R. v. Harrison,* 235 U.S. 292, 59 L. Ed. 234, 35 S. Ct. 27 (1914) and *Indian Terr. Illum. Oil Co. v. Oklahoma,* 240 U.S. 522, 60 L. Ed. 779, 36 S. Ct. 453 (1916); *see also* U.S. Dep't of the Interior, Federal Indian Law, 850-853 (Rev. ed. 1958).

The new lease negotiated with the Quileute Tribe in 1966 required the approval of the Secretary of the Interior, acting through the bureau. 25 C.F.R. § 131.5 (1970). The lease provides, among other things, that the premises can be used only for "Motel, Restaurant with Class H License, Resort, Trailer Park and Related Facilities." It also requires that comprehensive plans and specifications of contemplated improvements be submitted to the bureau before commencement of any construction. Although the bureau is not authorized to veto any contemplated improvement which falls within a permitted use, any change of permitted use does require an approval of the bureau, 25 C.F.R. § 131.12(a) (1970), as would an improvement for a use not previously authorized.

Plaintiff began a program of expansion and improvement under the terms of the 1966 lease. Although she was authorized to encumber the leasehold interest for the purpose of borrowing capital to improve the premises, she was required first to obtain approval of the Secretary of the Interior, 25 C.F.R. § 131.12(c) (1970).

Considering the totality of the foregoing facts, the trial court committed no error when it found that the plaintiff's contemplated expansion and improvement could be done "only with the consent and approval of . . . the Bureau of Indian Affairs."

Without question, a non-Indian could have engaged in a similar business. However, plaintiff's unique status entitles her to specialized assistance in accomplishing the commercial development. As an Indian, she is authorized to apply directly for federal funds or for federally financed tribal revolving credit funds—both of which were established to promote economic development of the individual Indian. 25 C.F.R. § 91.1-91.4 (1970).

In the absence of adequate funding for such loans, the bureau is required to seek the assistance of other federal or private lending institutions, to acquaint the Indian with them and to assist such borrower in making the necessary applications. In addition thereto, the bureau must furnish its technical services, feasibility studies, counsel and advice

concerning the planned improvements. This broad range of services is provided to promote the commercial, industrial, agricultural and economic development of Indians, according to the Supervisor of the Western Washington Indian Agency.

Plaintiff is entitled to all of the foregoing assistance because she is a noncompetent tribal Indian. Her eligibility is not diminished by the fact that she is a member of the Quinault Tribe conducting a business on the Quileute Indian Reservation. She is the beneficiary of a federal policy designed to encourage noncompetent tribal Indians to become economically self-sufficient, whether on the Quinault or another Indian reservation.

Under the particular facts of this case, including the downpayment derived from the bureau's sale of timber from plaintiff's allotted trust patent land, the defendants are not authorized to impose a personal property tax on plaintiff's resort business. This consists of the leasehold interest in restricted Quileute tribal lands upon which is located her personal property in the form of removable buildings, structures, improvements, equipment and furnishings being used in her operation and control of a business enterprise undertaken with the authorization of the Quileute Tribe and the Secretary of the Interior. Under the facts here presented, the trial court correctly found that it did not matter whether the property in question was real or personal.

Next, the defendants contend the trial court erred by finding the county's "original assessment was based upon what plaintiff paid for the entire resort business which included the leasehold estate and the leasehold estate is included in what is being assessed and taxed." The assignment of error is not well taken. First, there is substantial evidence to support the finding. More important, however, the business is exempt from taxation, under the facts of the case, thus the basis of its valuation for the purpose of taxation is not an issue.

This opinion is but a modern adaptation of *United States v. Rickert*, 188 U.S. 432, 47 L. Ed. 532, 23 S. Ct. 478 (1903).

In *Rickert* the state of South Dakota was prohibited from imposing a personal property tax on personal property which included horses, cows and wagons given to noncompetent Indians by the United States. Although we are not here involved with the federal government's gift or with a grant of horses, cows and wagons, the same principle is embraced. This noncompetent Indian's property was acquired through the direct investment of restricted funds derived from the Bureau's sale of timber on her allotted trust patent lands, and was maintained and developed through her own work, energy, ingenuity, savings and borrowing. This is but the modern equivalent usage of the cows, the horses and the wagons in *Rickert. See also United States v. Thurston County,* 143 F. 287 (8th Cir. 1906) and *Olney v. McNair,* 105 Wash. 18, 177 P. 641 (1919). It is as much the policy of the federal government to foster successful businesses on Indian reservations through the direct investment of a noncompetent Indian's restricted funds; and it is as much the policy of that government to encourage hard work, ingenuity and independence in such Indian business ventures as it is to encourage farming and fishing in an effort to adapt land to the use for which it is best suited.

It might be argued that noncompetent Indians no longer need a tax advantage because they have become independent, qualified members of the modern body politic. However, it is for Congress to make that determination, not this court. *United States v. Daney,* 370 F.2d 791 (10th Cir. 1966); *Dewey County v. United States,* 26 F.2d 434 (8th Cir. 1928).

Finally, the defendants contend that the trial court should not have considered exhibit 1A (the 1961 lease assigned to plaintiff), exhibit 3A (the assignment of the 1961 lease) or exhibit 5A (plaintiff's allotment of trust patent lands) as supportive of any finding of fact. It is urged that the statement of facts fails to reflect that the trial court formally admitted them.

■ The statement of facts establishes that all exhibits were marked, offered and referred to by counsel and the trial court without objection. Although argued in the defendants' brief, the issue was not raised by an assignment

of error. We will not consider errors raised in argument if they are not supported by an assignment of error. ROA I-43. Further, we will not consider objections made for the first time on appeal. *State v. Leevans,* 70 Wn.2d 681, 424 P.2d 1016 (1967).

The judgment of the trial court is affirmed.

HAMILTON, C. J., FINLEY, ROSELLINI, HUNTER, HALE, NEILL, and McGOVERN, JJ., concur.

