Ronald D. VALANDRA, John and Cecelia Walm, William and Wilma Whipple, Robert and Mabel Emery, Plaintiffs and Respondents,

v.

Lois VIEDT, in her capacity as Treasurer for the County of Tripp for the Unorganized County of Todd, Defendant and Appellant,

and

State of South Dakota, Intervenor and Appellant.

No. 11978.

Supreme Court of South Dakota.

Argued Sept. 14, 1977.

Decided Nov. 9, 1977.

Terry L. Pechota, Mission, James R. McCurdy, South Dakota Legal Services, Eagle Butte, Gary R. Thomas, South Dakota Legal Services, Fort Thompson, for plaintiffs and respondents.

Walter W. Andre and John P. Dewell, Asst. Attys. Gen., Pierre, for appellants; William J. Janklow, Atty. Gen., Pierre, Tom D. Tobin, Tripp County State's Atty., Winner, on the brief.

DUNN, Chief Justice.

This case challenges the authority of the State of South Dakota[1] to collect the "[m]obile home license fee" set out in SDCL 32–5–16.1 from Indians who reside in mobile homes within the Rosebud Reservation. The Circuit Court, Sixth Judicial Circuit, granted the plaintiffs' motion for summary

judgment and concluded as a matter of law that: (1) the State has no jurisdiction to impose or collect taxes as required by SDCL 10–9 from these plaintiffs; (2) the State has no jurisdiction to impose or collect the fee or tax required by SDCL 32–5–16.1 from these plaintiffs; and (3) the State must refund all of the monies paid under protest pursuant to these statutes by these plaintiffs. The State concedes the first part of the judgment relating to SDCL 10–9, but appeals from the judgment as it relates to SDCL 32–5–16.1. We modify the judgment to require the State to reimburse the plaintiffs in the amount of 85% of the "fee" paid pursuant to SDCL 32–5–16.1 and for the entire amount of the taxes paid pursuant to SDCL 10–9. As so modified, the judgment is affirmed.

The facts in this case were stipulated to by all parties. The plaintiffs are American Indians who reside on the Rosebud Reservation[2] and are enrolled members of the Rosebud Sioux Tribe. Each of them has purchased a mobile home and uses it as his residence within the boundaries of the reservation. The plaintiffs made applications for titles to their mobile homes and paid personal property taxes under SDCL 10–9 and the 3% additional registration fee required by SDCL 32–5–16.1 under protest.

Based upon these facts, the Circuit Court for the Sixth Judicial Circuit granted the plaintiffs' motion for summary judgment. After holding that the personal property tax issue was disposed of by *Pourier v. Board of County Commissioners of Shannon County*, 1968, 83 S.D. 235, 157 N.W.2d 532, the court went on to examine the "fee" provided for in SDCL 32–5–16.1. It concluded that the fee was in reality a tax and that the State has no right to collect any amount in excess of a fee reasonably related to the cost of the service rendered by the county treasurer. The annual fee charged for registration of used mobile homes was

---

1. The actual defendant is the treasurer for Tripp and Todd Counties, and the State has intervened in this action; however, for purposes of this opinion, we will refer to both the defendant and the intervenor as the State.

2. The United States Supreme Court has recently ruled that the Rosebud Reservation boundaries are the boundaries of Todd County, *Rosebud Sioux Tribe v. Kneip*, 1977, 430 U.S. 584, 97 S.Ct. 1361, 51 L.Ed.2d 660.

determined to be a reasonable charge for the service rendered.

SDCL 32–5–16.1 sets up a "[m]obile home license fee in lieu of other taxes." It reads as follows:

"In addition to any and all other license fees, registration fees, and compensation for the use of the highways, there shall be paid to the county treasurer upon application for the first or original registration of a mobile home, an additional and further license fee at the rate of three per cent of the purchase price of such mobile home or the fair market value thereof, whichever is greater; the payment of such license fee shall be in full and in lieu of all occupational, sales, excise, privilege, and franchise taxes levied by this state upon the gross receipts from all sales of mobile homes. The secretary of revenue may prescribe forms and reasonable rules and regulations for the ascertainment, assessment, collection, or return of the additional license fee."

SDCL 32–5–16.2 provides that 15% of the "fee" shall go to the state motor vehicle fund to defray costs of titling, registration and for unusual use of the highway. The other 85% goes to the county highway and bridge fund in the county where the mobile home is registered. We agree with the circuit court that the "fee" is, at least in part, a tax on mobile homes.

▄▄▄ The distinction between fees and taxes is that taxes are imposed for the purpose of general revenue while license or other fees are ordinarily imposed to cover the cost and expense of supervision or regulation. *State ex rel. Attorney General v. Wisconsin Constructors*, 1936, 222 Wis. 279, 268 N.W. 238. It is clear from the wording

of SDCL 32–5–16.2 that 85% of the fee collected is for revenue purposes and bears no relationship to the cost of administering the registration system. This court has concluded that the original registration fee on motor vehicles set out in SDCL 32–5–31[3] is "an excise tax, for revenue purposes." *Holdcroft v. Murphy*, 1939, 66 S.D. 388, 283 N.W. 860. We conclude, therefore, that SDCL 32–5–16.1 is primarily a tax for revenue purposes and clearly goes beyond the limits of a fee for costs of administering the system.

Having found that the "fee" is in reality a tax, we must now determine whether the State has jurisdiction to levy and collect such a tax from Indians who live in the mobile homes within the boundaries of the Rosebud Reservation. The following general rule has been adopted by both the United States Supreme Court and this court:

"State laws generally are not applicable to tribal Indians on an Indian reservation except where Congress has expressly provided that State laws shall apply. It follows that Indians and Indian property on an Indian reservation are not subject to State taxation except by virtue of express authority conferred upon the State by act of Congress. Federal Indian Law, 1958 Ed., 845.

See also: *McClanahan v. Arizona Tax Commission*, 1973, 411 U.S. 164, 170–171, 93 S.Ct. 1257, 1261, 36 L.Ed.2d 129, 135; *Pourier v. Board of County Commissioners of Shannon County*, 1968, 83 S.D. 235, 157 N.W.2d 532, 534.

▄▄▄ Since SDCL 32–5–16.1, as applied to these plaintiffs, provides for a tax on Indian property located on a reservation, and Congress has not expressly authorized

---

**3.** The wording of SDCL 32–5–31 is substantially the same as that of SDCL 32–5–16.1, and reads: "In addition to any and all other license fees, registration fees, and compensation for the use of the highways, there shall be paid to the county treasurer upon application for the first or original registration of a motor vehicle or recreational vehicle, an additional and further license fee at the same rate of tax as provided by § 10–45–2 of the purchase price of

such vehicle or the fair market value thereof, whichever is the greater; the payment of such license fees shall be in full and in lieu of all occupational, sales, excise, privilege, and franchise taxes levied by this state upon the gross receipts from all sales of such vehicles. The secretary of revenue may prescribe forms and reasonable rules and regulations for the ascertainment, assessment, collection, or return of the additional license fee."

such a tax,[4] we conclude that the State is without jurisdiction to levy or collect such a tax from these plaintiffs.

The State contends that the proper test to be applied is whether state laws would interfere with reservation self-government or would impair a right granted or reserved by federal law. If the state laws do not interfere with self-government or impair a federal right, then they apply even on reservations. *Organized Village of Kake v. Egan*, 1962, 369 U.S. 60, 82 S.Ct. 562, 7 L.Ed.2d 573; *Williams v. Lee*, 1959, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251. Although this may be the proper test for measuring some aspects of jurisdiction over Indians on the reservation, the United States Supreme Court in *Mescalero Apache Tribe v. Jones*, 1973, 411 U.S. 145, 93 S.Ct. 1267, 36 L.Ed.2d 114, and in *McClanahan*, supra, stated very clearly that in the "special area of state taxation" the test to be applied is whether jurisdiction has been ceded[5] or whether a federal statute specifically grants the power of taxation to the state.

■ Various off-reservation activities of the plaintiffs are used by the State to justify the tax. It contends that the purchase of the mobile homes was off the reservation and that the applications for titles were made in Winner, the county seat for Tripp and Todd Counties, which is also off the reservation. In its trial brief and in its argument to this court, the State has conceded that the place of purchase is irrelevant to the determination of its jurisdiction; therefore, we do not feel we can properly consider argument on that point. Since the title document of only one of the plaintiffs is in the record, we have no way of knowing where all the mobile homes

were purchased; thus, it is impossible to use the place of purchase as a factor in our decision. We also feel that the location of the county seat is irrelevant to our decision. The property has remained within the reservation boundaries, and that is the key factor. The tax is on a mobile home, not on an individual person, and the mere fact that the plaintiffs had to go off the reservation to get to the county seat is not determinative.

The State further argues that there is support for its position in *Moe v. Salish & Kootenai Tribes*, 1976, 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96. In *Moe*, the tribe conceded that its members were not immune from the nondiscriminatory fee for registration and issuance of license plates for motor vehicles provided for in § 53–122 of the Revised Code of Montana. That fee is not the same as the one in SDCL 32–5–16.1, however, and is the equivalent of SDCL 32–5–5, setting out a flat amount to be paid, not a one-shot, first-time registration "fee" based upon the vehicle's value. In light of this, we find the tribe's concession in *Moe* of little probative value.

■ The essence of the State's argument is that the plaintiffs, as citizens of South Dakota, should pay for benefits such as roads and highways received from the State. It argues that the revenue raised by the "fee" will go toward highways and bridges in Todd County, and that the plaintiffs should therefore be required to pay for benefits received from the State. Whatever merit this argument may have in terms of equity, it clearly is without merit as a basis for granting jurisdiction over Indian property on a reservation. The argument

4. Congress not only has not specifically authorized the tax, but the Buck Act, 4 U.S.C. § 109, specifically exempts Indians from state sales, use and income taxes, while allowing such taxation of other federal areas within state boundaries.

5. It is settled law that the only method of ceding jurisdiction is for the state to assert jurisdiction and for a majority of the adult Indians on the reservation to consent to jurisdiction in a special election pursuant to 25 U.S.C. 1321–1326. *Kennerly v. District Court*,

1971, 400 U.S. 423, 91 S.Ct. 480, 27 L.Ed.2d 507; *Fisher v. District Court*, 1976, 424 U.S. 382, 96 S.Ct. 943, 47 L.Ed.2d 106. It is interesting to note that subsequent to *McClanahan*, supra, the United States Supreme Court ruled that a grant of jurisdiction pursuant to 25 U.S.C. 1321–1326 will not, by itself, give a state taxation power over Indians and Indian property on a reservation. *Bryan v. Itasca County*, 1976, 426 U.S. 373, 96 S.Ct. 2102, 48 L.Ed.2d 710.

has been made in every Indian-State taxation case, and the courts have universally stated that this is a matter for Congress and not the courts to resolve. This court answered a similar argument in *Pourier,* supra, this way:

"Taxation or exemption of Indians by either the Federal Government or by the State is a matter for Congressional resolution. For this reason, the contentions made by the county should properly be directed to the Congress of the United States. As the court observed in *United States v. Rickert,*[6] supra, 'It is said that the state has conferred upon these Indians the right of sufferage and the other rights that ordinarily belong only to citizens, and that they ought, therefore, to share the burdens of government like other people who enjoy such rights. These are considerations to be addressed to Congress. It is for the legislative branch of the government to say when these Indians shall cease to be dependent and assume the responsibilities attaching to citizenship. That is a political question, which the courts may not determine.'" 83 S.D. at 240, 157 N.W.2d at 534.

We wish to emphasize that our holding in this case is a narrow one. We hold that collection of the "fee" set out in SDCL 32–5–16.1 at a time when the mobile home is located within the boundaries of a reservation is beyond the jurisdiction of the county treasurer. We note, however, that SDCL 32–3–3.1 provides that, as to all new mobile homes purchased in the State, the mobile home dealer is to collect the initial registration "fee" and transfer it to the treasurer. We see nothing wrong with requiring Indian people who buy mobile homes in South Dakota, outside of Indian country, to pay the full "fee" as required by SDCL 32–5–16.1 at the time of purchase.

Finally, we must decide whether the "fee" required by SDCL 32–5–16.1 can be divided fairly to reflect a percentage consti-tuting a "legitimate fee" and a percentage actually constituting a tax. The deputy secretary of revenue for the State, in reply to one of the plaintiffs' interrogatories, stated:

"As to question 5, the expense of the Motor Vehicle Department of the State of South Dakota to title and register one mobile home is so intricately involved with the overall expenditures and programs of the Motor Vehicle Department it is impossible to state, with certainty, the exact expense for one mobile home. However, it can be affirmed that such expense does not exceed 15% of the additional registration fee provided by SDCL 32–5–16.1."

In view of this, we conclude that 15% of the amount is a close approximation of the fee for the cost of the title and registration program and that the plaintiffs are liable for that amount. The circuit court concluded that the annual fee in the amount of five dollars charged for registration of used mobile homes was a reasonable charge for the service rendered. The initial registration of a mobile home requires more paperwork than the subsequent annual registration of used homes, and we are of the opinion that the 15% charge is a more accurate reflection of the initial registration and titling cost to the State.

We therefore modify the judgment of the trial court to require that the plaintiffs be reimbursed for 85% of the fee paid pursuant to SDCL 32–5–16.1 and for the entire amount of the taxes paid pursuant to SDCL 10–9.

The judgment as modified is affirmed.

All the Justices concur.

---

**6.** 1903, 188 U.S. 432, 23 S.Ct. 478, 47 L.Ed. 532.